**UNITED ARTISTS CORPORATION,**
**Plaintiff,**

v.

**FIELDS PRODUCTIONS, INC.,**
**et al., Defendants.**

**No. 72 Civ. 5432 HRT.**

United States District Court,
S. D. New York.

Sept. 14, 1973.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City by Paul Martinson and Martin Stein, New York City, for plaintiff.

Fitelson & Mayers, New York City by Clifford Forster and Harold J. Sherman, New York City, for defendant Selected Pictures Corp.

OPINION

TYLER, District Judge.

In this federal interpleader action, brought pursuant to 28 U.S.C. § 1335, defendant Selected Pictures Corporation ("Selected") has moved to dismiss the complaint for lack of jurisdiction and for laches. As is true in most actions of this nature, the background is complicated and rather confused and requires some discussion before reaching the legal resolution of the issues.

The interpleader complaint recites that the plaintiff holds within New York State the sum of $47,553.86, "the amount accrued and derived from the distribution by plaintiff of a motion picture entitled "Happy Anniversary" (formerly known as "Anniversary Waltz"). Complaint, para. 2. Paragraph four of the complaint continues to state that this sum is payable as provided in Section 14 of the "Finance Agreement" between defendant Fields Production, Inc. ("Fields") and plaintiff United Artists, dated September 12, 1956 and amended November 21, 1958.

Section 14 of this "Finance Agreement" in turn sets out a definition of what shall constitute "producer's income" from the production and distribution of the motion picture, and continues to state that such producer's income

"shall be applied in the following order of priority . . . ." After this follows in essence a listing of recipients of the future income, starting with United (for reimbursement for any production loans advanced), then Fields (for "completion funds furnished"), then to "Producer's sales representative" (for services, a fee equal to 3% of gross domestic receipts and 5% of net producer's share of gross receipts from abroad). Selected was the sales representative for producer Fields, although it is not named specifically in the contract. The fourth application is to the producer for certain deferred costs; the fifth is to "any other persons, the amounts of their deferred compensation as have been provided for in the approved Final Production Budget of the Picture or as agreed upon between Producer and United;" sixth declares that the residual producer's income shall be considered net profits "and shall be allocated as hereinafter provided".

The 1958 "amendment" to the Finance Agreement was again made solely between Fields and United. Its main thrust was to change the above order of application, dropping "producer's sales representative" from third to fifth on the list, and otherwise cutting down Selected's rights.

Selected claims that plaintiff has not deposited in the Court Registry the entire sum subject to adverse claims, and that this failure is fatal to federal jurisdiction. Selected contends that United owes it far more than the $47,553.86 already deposited, and cites in support of this contention an action commenced against United and Fields on February 27, 1970, in the Supreme Court of New York, County of New York. An amended verified complaint was served on March 17, 1971 upon United, but not upon Fields. Three causes of action are therein alleged. The first count asserts that on June 21, 1956, Selected contracted with one Joseph Fields to render various services in connection with the release of the film "Anniversary Waltz",

in return for 3% of the distributor's gross receipts from the distribution of the film in the United States, plus 5% of the Net Producer's share of gross receipts from distribution abroad. These "were to be determined under a financing and distribution agreement, which Fields through his corporation, Fields Production, Inc., on or about September 12, 1956, entered into with UA." Affidavit of attorney Sherman, verified on March 8, 1973, at p. 3. In turn, it is alleged that United Artists in the financing and distribution agreement agreed to pay Selected its share according to the terms of the first contract. Under this contract, Selected claims it earned at least $67,655.00; in addition, it claims $12,750.00 as owing due to the allegedly improper distribution of the film.

The second count in the Selected amended complaint claims $69,450.00. It is alleged that Selected advanced Fields $40,000 in consideration of 25% of the proceeds of sale of the motion picture rights to the play, plus 25% of Fields' fee as producer, plus 15% of Fields' net profits from distribution; in turn, "U.A. in its financing and distribution agreements with Fields agreed to pay such obligations to Selected under a formula provided in such contracts." Affidavit of attorney Sherman, *supra* at p. 4. The third count in the complaint seeks $153,169 damages from United for the above monies had and received.

While the second count arguably does not fall within the "priority of application of producer's income" clause in the Finance Agreement between Fields and United, and thus is not directly involved in the instant action, the first count (at least to the extent of the $67,655.00) evidently lays claim to the same "fund" underlying the interpleader. And it should be noted that the interpleader complaint recites that "the said sum of $47,553.86 represents the amount accrued after the payment of certain off-the-top charges, distribution fees, print, advertising and other expenses, and aft-

er the repayment or crediting of production loans and producer's advances for the completion of the picture." There is no evidence documenting the manner in which United arrived at this figure. In essence, then, Selected disputes both the validity of the 1958 amendment and the propriety of United's deductions from the gross receipts, a portion of which it claims under the contracts mentioned above.

For the following reasons, I have concluded that as a sound exercise of judicial discretion this court should not take interpleader jurisdiction of this case.

First, where an interpleaded defendant raises a colorable claim to more than the amount interpleaded, and the record is not clear, it is the rule that "[i]f the stakeholder desires to dispute the amount of his obligation in whole or in part it is necessary that he deposit or give bond for the largest amount that is in dispute and plead that the amount is disputed and that only a specified amount or none thereof is admitted to be due. The right of the stakeholder to deduct for controverted set-offs will normally be decided during a trial of the merits and not at the stage of determining jurisdiction." 3A Moore's Federal Practice ¶ 22.10 at 3080 (2d ed. 1970). See also Metal Transport Corporation v. Pacific Venture Steamship Corporation, 288 F.2d 363 (2d Cir. 1961); United Benefit Life Insurance Company v. Leech, 326 F.Supp. 598 (E.D.Pa.1971); Prudential Insurance Company of America v. Bennett, 299 F.Supp. 451 (S.D. Ga.1969); Frank Briscoe Company, Inc. v. Albert Pick Co., Inc., 282 F.Supp. 321 (D.N.J.1968). As the court recognized in *Metal Transport, supra*, "this is not a case in which plaintiff's obligation to the claimants was subject to deductions which were definitely ascertainable by arithmetic process. . . . Here, the amount deducted is controverted, substantial, and uncertain." 288 F.2d at 365–366.

There is at least the suggestion, moreover, that even Fields is not satisfied with the amount allegedly in the "fund". In its answer, Fields asserts that its claims are "without prejudice to its unliquidated claims which are the subject of an action entitled Fields Productions Inc. v. United Artists Corporation, Supreme Court, State of New York, New York County, Index # 18007–1968." Whether this suit involves the same disputed contract and deductions, however, is unclear.

Secondly, the contracts forming the basis for the allegedly conflicting liabilities are two-party contracts between Fields and United; no other person or corporation is named. Because of a prior contract between Selected and Fields, however, Selected might be able to establish that it is a creditor beneficiary of the 1956 contract between Fields and United; that it acted in reliance on the contract; and therefore that the purported "amendment" in 1958 could not be effective as to it. On the other hand, it might be established that none of the claimants, other than Fields, have any rights under the contracts with United (which only talk about how certain monies "shall be applied", without specifically naming anyone other than the parties). In this view, Selected must sue Fields to obtain its fees, since it contracted with Fields.

In either event, there would be no "adverse claimants" to the "producer's income" as required by § 1335. This lack of adversity is borne out by the answers of several of the defendants. Fields claims the entire $47,553.86, but asserts that it is obligated upon receipt thereof to pay out the sum *pari passu* to the other defendants. Defendants Morton L. Leavy and Louis Blau in their answer ". . . claim that they are entitled to the sum of $3,040.00 on a *pari passu* basis . . ." while Leavy ". . . denies that he is claiming any interest in the sum of $47,553.86 . . . by reason of his having been a trustee under the trust of Joseph Fields for the reason that said trust has been terminated and the corpus of said trust

paid over to Marion Fields. . . ." In other words, Leavy and Blau contend that defendant Fields is entitled to the fund, and that they should be paid by Fields out of this; thus they ask judgment "declaring Fields Productions, Inc. to be the owner of said sum." Finally, in their answer, defendants Dymor Productions, Inc. and Robert Allen "admit that said sum is payable to defendant Fields Productions, Inc." on this same basis.

What is presented, then, is a dispute between Fields and Selected as to the priority of certain payments, with Selected (and possibly Fields) disputing the amounts to be paid as well. State court actions are pending which will presumably resolve these matters, and this leads to the third and final barrier to the maintenance of this suit as an interpleader action. The Fields complaint against United was filed sometime in 1968; the Selected action was commenced in February of 1970; the instant complaint was not filed until December 27, 1972. At least one federal judge has indicated that "[d]ismissal for plaintiff's laches by a district court would be particularly appropriate where a state court proceeding was commenced two years prior to filing the interpleader action in federal court and where the plaintiff could interplead any defendant in the state action who might cause multiple vexation." United Benefit Life Insurance Company v. Leech, *supra*, 326 F.Supp. at 601. See also, National Surety Corporation v. Globe Indemnity Company, 331 F.Supp. 208 (E.D.Pa.1971).

Interpleader is an equitable action, the maintenance of which is subject to the discretion of the court. Given the ambiguity surrounding the amount of the "fund" in suit, the lack of adversity among most of the defendants, and the long pendency of state court actions against United by the only truly adverse claimants, it would seem that the equities favor dismissal of the complaint.

Settle order and judgment on notice.