**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**AMBASSADOR GROUP, INC., et al., Defendants.**

No. 85–2132 (RJD).

United States District Court, E.D. New York.

July 13, 1988.

Damato & Lynch, New York City, for plaintiff.

Davis & Hoffman, New York City, for H. Davis.

Levy, Bivona & Cohen, New York City, for Levy Bivona & Cohen.

Hughes, Hubbard & Reed, New York City, for Coopers & Lybrand.

Stroock, Stroock & Lavan, New York City, for James P. Corcoran.

Robinson, Silverman, Pearce, Aronson & Behrman, New York City, for J. Wells.

Martin E. Karlinsky, New York City, for Quaif, Overseas & Domestic Underwriters, Ltd.

Kostelantz & Ritholz, New York City, for Kroll & Cameron, III.

Reavis & McGrath, New York City, for Hirsch.

Skadden, Arps, Slate, Meagher, & Flom, New York City, for Ambassador Group, A. Chait, DJ Chait, EC Chait DM Auster, & JS Maresca & Richard Tafro, Surplus Lines, Budget Payment Plan & Ins. Management Corp. of Vermont.

Commissioner of Banking and Ins. for the State of Vt., New York City.

## MEMORANDUM DECISION AND ORDER

DEARIE, District Judge.

Plaintiff National Union Fire Insurance Company of Pittsburgh, P.A. ("National Union") is the liability insurer of the directors and officers of Ambassador Group Incorporated ("Ambassador Group"). Ambassador Group is an insurance holding company; its principal subsidiaries are Ambassador Insurance Company and Horizon Insurance Company, both of which are in receivership. National Union filed this interpleader action in the hopes of resolving multiple claims that have been asserted against the directors and officers insured by National Union. National Union deposited a three million dollar bond with the Court, claiming that amount to be the limit of its liability under the policy at issue.

Currently pending before the court are several motions by the various parties. National Union has moved for summary judgment to sustain the purported statutory interpleader action. Defendant Bard, the Vermont Commissioner of Insurance and Banking, has moved to dismiss the Complaint because of a) National Union's failure to deposit a sum sufficient to invoke the Court's jurisdiction under 28 U.S.C. § 1335, and b) the improper joinder of a party defendant. Defendants Arnold Chait, Doris Chait, Edward Chait, Douglas Auster, Joseph Maresca, and Richard Tafro

(the "Individual Counterclaim Plaintiffs") move for partial summary judgment on their first counterclaim for relief, seeking under the policy contemporaneous reimbursement of their legal fees.

*The Amount of the Stake*

■ The central controversy presented by the motions by National Union and Commissioner Bard concerns the amount of the "stake" that National Union must deposit with the Court in order to sustain the interpleader action. As noted above, National Union argues that the three million dollar bond it has already deposited is sufficient. The defendants contend that, at a minimum, six million dollars must be deposited with the Court. For the reasons set forth below, the Court finds that six million dollars must be deposited in order to secure the Court's jurisdiction and sustain this interpleader action.

On December 22, 1983, National Union issued to Ambassador Group and its subsidiaries a Directors and Officers Liability and Corporate Reimbursement Insurance policy (the "Policy"), covering the period December 22, 1983 through December 22, 1986. By its terms, the insurer's liability is limited to three million dollars for each policy year.

The Policy is a "claims made" policy, which insures against losses arising from any claim or claims that are made against the insureds, jointly or severally, during the policy period by reason of any wrongful act. Nowhere in the Policy is "claim" defined. The term "wrongful act" is defined as "any breach of duty, neglect, error, misstatement, misleading statement, omission or other act done or wrongfully attempted by" the directors or officers, or any allegation of same. Paragraph 7(b) of the Policy provides that "the Insureds shall as a condition precedent to the Insured's right to be indemnified under this policy give to the Insurer notice as soon as practicable in writing of any claims made upon the Insureds." Paragraph 7(c) further provides that if the Insured receives notice that a third party intends to assert a claim or becomes aware ·of any occurrence that may subsequently give rise to a claim, and

the Insured gives written notice to National Union of such notice or such occurrence, then any claim subsequently made against the Insured arising out of such wrongful act "shall for the purpose of this Policy be treated as a claim made during the currency hereof."

By letter dated June 15, 1984, from Ambassador Group's counsel, National Union received notice of claims asserted against directors and officers in an action entitled *Michaels v. Ambassador Group, Inc., et al.* (the "*Michaels* action"). The *Michaels* action, also pending before this Court, is a class action brought on behalf of certain Ambassador Group shareholders. The *Michaels* complaint alleges, in substance, that Ambassador Group, its officers, and directors failed to disclose the improper conduct of officers and directors and misrepresented the financial condition of the parent holding company in violation of Section 10(b) of the Securities Exchange Act of 1934.

By letter dated October 17, 1984, from Ambassador Insurance's counsel, National Union received notice of a claim that was ultimately asserted in an action entitled *David T. Bard v. Arnold Chait, et al.*, No. 85–2441 (D.N.J.) (the "*Ambassador Insurance* action"). Thus, although the complaint in that action was not filed until 1985, in Year II of the Policy, National Union received notice of the claim in Year I of the Policy. The Complaint was brought by the Vermont Commissioner of Banking and Insurance as receiver for Ambassador Insurance against its officers and directors for mismanagement of Ambassador Insurance.

On April 8, 1985, during the second year of the Policy, a third-party action entitled *Alan S. Quaif, et al. v. Ambassador Group, Inc., et al.* (the "*Quaif* action"), was filed in an action brought by the Vermont Commissioner of Banking and Insurance in Georgia state court, *David T. Bard v. Alan S. Quaif, et al.*, No. D–17472 (Superior Ct. Fulton Co., Ga.). The *Quaif* claimants, insurance agents in Georgia, seek compensation from officers and directors of Ambassador Insurance for pre-

miums, commissions, and other unspecified business allegedly lost as a result of misrepresentations in financial statements and the insolvency of Ambassador Insurance.

On October 4, 1985, also during the second year of the Policy, the New York Superintendent of Insurance commenced an action entitled *James P. Corcoran v. Ambassador Group, Inc., et al.* (the *"Horizon* action") against former directors and officers of Horizon in New York state court. The complaint in the *Horizon* action alleges in substance that the directors and officers permitted Horizon to be looted by Ambassador Insurance and otherwise mismanaged the company in derogation of their duty of loyalty to Horizon.

Defendants contend that National Union received notice of the four "claims" described above in each of two policy years. According to defendants, because the Policy provides for a limit of liability of three million dollars for each policy year, National Union's liability under the Policy is six million dollars, and not the three million dollars deposited with the Court. National Union argues that it received notice of "a wide range of alleged wrongful conduct by directors and officers of Ambassador Group and its subsidiaries ... which caused the demise of Ambassador Group and the insolvency of its principal subsidiaries" when it received notice of the *Michaels* action. Plaintiff's Memo at 7. It is National Union's view that the actual claims made in 1985, during Policy Year II, all relate back to the notice received in Policy Year I, in that they arise out of the acts alleged in the *Michaels* action as well as information National Union gleaned from other sources. These include a Report of the Vermont Commissioner and assertions of the New York Superintendent in his application to liquidate Horizon. Under this view, all claims were "made" in Policy year I, a $3,000,000 limit of liability applies, and National Union has therefore posted the appropriate bond to sustain its interpleader action in this Court.

National Union invokes this Court's jurisdiction in reliance on 28 U.S.C. § 1335. Under this provision, known as "statutory in-terpleader" in contrast to "rule interpleader" (Fed.R.Civ.P. 22), only minimal diversity is required and the stakeholder may issue process nationwide. *See* 28 U.S.C. §§ 1335(a)(1), 2361. As a prerequisite to statutory interpleader, the stakeholder must deposit a bond in the amount that the claimants "are claiming or may claim to be entitled to." 28 U.S.C. § 1335(a)(1); *Metal Transport Corp. v. Pacific Venture Steamship Corp.*, 288 F.2d 363, 365 (2d Cir.1961) ("the court will not have jurisdiction in an action of interpleader unless the stakeholder has deposited the entire sum in its possession which the claimants claim").

Statutory interpleader thus differs in a significant respect from rule interpleader. Whereas under rule interpleader a stakeholder may deposit the amount it believes to be in dispute, under statutory interpleader "an interpleading plaintiff must deposit with the Court the highest amount claimed by defendants." *Nationwide Mutual Ins. Co. v. Eckman*, 555 F.Supp. 775, 778 (D.Del.1983); *see also* 3A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 22.10, at 22–94 (1987) (it is necessary to give bond for "largest amount that is in dispute").

In this action, National Union has deposited a bond in the amount of three million dollars, claiming that that is the limit of its liability under the Policy. The various claimants named in the Complaint, however, assert through their counterclaims and motions for summary judgment that National Union's liability under the Policy is at least six million dollars. It is their contention, as discussed above, that the *Ambassador Insurance* and *Michaels* actions involve claims made in the first policy year and that the *Horizon* and *Quaif* actions involve claims made in the second policy year. Thus, National Union has deposited what it views as its maximum liability and not what the claimants claim. On this basis alone, this Court must conclude that it lacks jurisdiction over the instant interpleader action. Rather than dismiss the action, however, the Court will give National Union an opportunity to post the appropriate amount of six million dollars. *See e.g., General Acc. Group v. Gagliardi,*

593 F.Supp. 1080, 1087 (D.Conn.1984), *aff'd without op.*, 767 F.2d 907 (2d Cir.1985); *see generally* 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1716, at 600–02 (1986).

■ The Court is further persuaded that six million dollars represents the proper amount of the stake by its review of the Policy as well as of the claims asserted in the four actions at issue—the *Michaels, Ambassador Insurance, Horizon,* and *Quaif* actions. There is no dispute that National Union received notice of the *Michaels* action during the first policy year. Nor is there any dispute that National Union received notice of the claim underlying the *Ambassador Insurance* action during Policy Year I (even though the lawsuit was not actually filed until Policy Year II). What is fervently disputed is when claims were "made" with respect to the *Horizon* and *Quaif* actions.

National Union contends, in essence, that the *Quaif* and *Horizon* action claims relate back to the *Ambassador Insurance* and *Michaels* action claims made in Policy Year I because they involve "the same act or interrelated acts". This contention, however, is not supported by either the plain terms of the Policy or by the nature of the claims asserted in the *Quaif* and *Horizon* actions.

National Union relies in part on language excerpted from paragraph 5(c), which is contained in Endorsement # 1 to the Policy. Paragraph 5(c) provides in its entirety as follows:

> This policy is only to pay the excess over the retention amount stated in item 4 of the Declarations in respect of each and every loss hereunder, including costs, charges and expenses as described in Clause 6. The retention amount stated in item 4 of the Declarations is to be borne by the Insureds and is not to be insured. Losses arising out of the same act or interrelated acts of one or more of the Insureds shall be considered a single loss and only one retention amount shall be deducted from the aggregated amount of such losses. In such cases, the retention shall be pro rated among the Insureds in proportion to their respective losses.

National Union argues that "if claim is made against directors or officers or notice is given of a threatened claim or of occurrence which might give rise to claim, then any claims subsequently alleging the same act or interrelated acts of which notice was previously given to National Union are part of the same 'loss' and subject to the limit of liability of the Policy Year applicable to that loss." Plaintiff's Memo at 26. It is apparent, however, that when read in context, Paragraph 5(c) applies to the calculation of the retention amount to be borne by the defendants and not to the issue of when claims are made for the purposes of calculating National Union's maximum liability for a particular policy year. This conclusion is buttressed by the fact that comparable language, providing that claims arising out of the same act or interrelated acts constitute a single claim or relate back to when notice of the first claim was received, is notably absent from the remainder of the Policy.

National Union's reliance on paragraph 7(c) of the Policy is similarly to no avail. Paragraph 7(c) states:

> If during the policy period or during the discovery period if the right is exercised by the Insured in accordance with Clause 8(a):
>
> (i) the Company named in item 1 of the Declarations or the Insureds shall receive written or oral notice from any third party that it is the intention of such third party to hold the Insureds responsible for the results of any specified Wrongful Act by the Insureds while acting the capacities aforementioned; or
>
> (ii) The Company named in item 1 of the Declarations or the Insureds shall become aware of any occurrence which may subsequently give rise to a claim being made against the Insureds in respect of any such wrongful Act;
>
> and shall in either case, during such period give written notice to the Insurer of the receipt of such written or oral notice under (i) above or such occurrence under

(ii) above, then any claim which may subsequently be made against the Insureds arising out of such Wrongful Act shall for the purpose of this policy be treated as a claim made during the currency hereof.

This paragraph thus provides for certain limited instances in which a claim that is subsequently made will relate back to prior notice of an occurrence. If the Company becomes aware of and gives the Insurer written notice of an occurrence that may give rise to a claim, then any claim subsequently made "will be treated as a claim made during the *currency hereof.*" (emphasis added). Significantly, this provision does not indicate that the claim will relate back to the specific policy year during which notice of an occurrence was given, but, rather, more generally provides that the subsequent claim will be treated as a claim made during the currency of the policy. Thus, the provision appears to be designed to protect the insureds. If they notify the insurer of an occurrence that may give rise to a claim, and the claim is not actually asserted until after the Policy expires, then the claim will relate back to the "currency" of the Policy.

The construction that National Union attempts to give this provision is strained and inconsistent with the plain terms of the Policy. Essentially, National Union would like to rewrite the Policy to provide that if it receives notice of a claim and then endeavors to investigate all possible acts by the directors who were implicated in the initial claim, it can effectively limit its liability for all subsequent claims to the limit of liability for the Policy year in which the first claim is asserted. This interpretation, taken to an extreme, would effectively permit National Union to limit its maximum aggregate liability to three million dollars rather than the nine million dollars provided for in the Policy.

Moreover, it would transform the Policy into an "occurrence" policy when, in fact, it is quite clearly a "claims made" policy. Where National Union wanted to provide that losses arising out of the same interrelated acts shall be treated as one loss, as it did in the paragraph dealing with retention, it did so in clear and unmistakable language. The language in paragraph 7(c), however, is at best ambiguous. In such a situation, it is axiomatic that the Policy is to be construed against the insurer. *McCormick & Co. v. Empire Ins. Group*, 690 F.Supp. 1212, 1213 (S.D.N.Y.1988) (under New York law, "any ambiguity in an insurance clause must be resolved against the insurer and in favor of the insured"). *See also Sincoff v. Liberty Mutual Fire Ins. Co.*, 11 N.Y.2d 386, 390, 230 N.Y.S.2d 13, 15, 183 N.E.2d 899, 901 (1962); *Stainless, Inc. v. Employers' Fire Ins. Co.*, 69 A.D.2d 27, 33, 418 N.Y.S.2d 76, 79 (1st Dep't 1979), *aff'd*, 49 N.Y.2d 924, 428 N.Y. S.2d 675, 406 N.E.2d 490 (1980).

Even assuming, *arguendo*, that National Union's interpretation of the Policy were correct, it is not readily apparent that the claims asserted in the four actions that are the subject of the interpleader all arise out of "the same or interrelated acts." Broadly construed, the claims are interrelated to the extent that they all involve allegations of wrongdoing of one sort or another and relate, in some way, to the demise of Ambassador Group and its subsidiaries. However, they are legally distinct claims that allege different wrongs to different people. The *Michaels* complaint alleges that the directors and officers of Ambassador Group, among others, violated the federal securities laws and state common law by failing to disclose certain information in documents disseminated by Ambassador Group. The *Ambassador Insurance* action, filed by the Receiver for Ambassador Insurance on behalf of its policyholders, claimants and creditors, alleges that the directors and officers of Ambassador Insurance negligently mismanaged the company, breached fiduciary duties to the company and its shareholders, and misrepresented the financial condition of Ambassador Insurance in its annual statements filed with the Vermont Department of Banking and Insurance. The *Quaif* action alleges that the directors and officers of Ambassador Insurance induced the third party plaintiffs, insurance agents, to sell Ambassador

Insurance policies in reliance on false financial statements. The *Horizon* action, brought by the liquidator of Horizon Insurance Company, alleges that the directors or officers of Horizon negligently mismanaged Horizon, breached their fiduciary duties, and misrepresented the financial condition of Horizon in annual statements to the New York Department of Insurance.

National Union received notice of the *Michaels* and *Ambassador Insurance* actions in the first year of the Policy. Notice of the *Quaif* and *Horizon* actions was given in the second year of the Policy. Accordingly, six million dollars represents the proper amount of the stake. Plaintiff's motion for summary judgment sustaining the interpleader action is denied.

*Defendant Horizon's Motion to Dismiss*

■ Defendant Horizon moves to dismiss the Interpleader action on the grounds that an indispensable party—the New York Superintendent of Insurance—has been improperly joined. By Order of Liquidation dated November 27, 1984, the Supreme Court of the State of New York "enjoined and restrained" all persons from "prosecuting any action against [Horizon] or its estate, or the Superintendent and his successors in office as Liquidator thereof." Defendant Horizon contends that this state court injunction precludes National Union from suing the Superintendent in this Court without first obtaining leave from the State Court. Because leave was not obtained, it is argued, the Superintendent was improperly joined. Further, defendant Horizon contends that he is an indispensable party and that the action must therefore be dismissed.

Although it is not disputed that the Superintendent is an indispensable party, there is some dispute as to whether he was properly joined. Generally, "a court will not entertain jurisdiction of a suit against a receiver appointed by another court until the appointing court has given its consent that he be sued." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cavicchia*, 311 F.Supp. 149, 160 (S.D.N.Y.1970). However, where, as here, the receiver is not the real party in interest, this rule need not apply.

*Id.* at 161. Accordingly, the motion by defendant Horizon to dismiss for improper joinder of an indispensable party is denied.

*The Remaining Motions*

The Second Circuit has recognized that normally an interpleader action is concluded in two stages, the first determining that the requirements of § 1335 are met and relieving the plaintiff stakeholder from liability, and the second adjudicating the adverse claims of the defendant claimants. *New York Life Ins. Co. v. Connecticut Development Authority*, 700 F.2d 91, 95 (2d Cir.1983). That is the preferred course here, as the Court has found jurisdiction lacking and it is unclear whether plaintiff will post the additional bond in order to sustain jurisdiction. Should the plaintiff do so, the Court will then decide the motions for the claimants.

*Conclusion*

The motions to dismiss for failure to post a sufficient bond are granted. The motion to dismiss for improper joinder is denied. Entry of the Order of Dismissal is hereby stayed until 5 P.M., August 5, 1988, to permit plaintiff an opportunity to deposit with the Clerk of the Court the additional three million dollars to sustain this action. In the event such sum is deposited, the Court will immediately file its Memorandum and Decision addressing the Individual Counterclaim Plaintiffs' motion for partial summary judgment.

SO ORDERED.