**A & E TELEVISION NETWORKS, LLC and D & D Television Productions, Inc., Interpleader, Plaintiffs,**

v.

**PIVOT POINT ENTERTAINMENT, LLC, et al., Defendants.**

No. 10 Civ. 9422 (PGG)(JLC).

United States District Court, S.D. New York.

March 18, 2011.

Martin David Edel, Adam J. Safer, Miller & Wrubel, P.C., Cameron Altman Stracher, Cameron A. Stracher Attorney at Law, New York, NY, for Plaintiffs.

Howard Ernest King, Stephen David Rothschild, King, Holmes, Paterno & Berliner, LLP, Andrew Brad Brettler, Martin D. Singer, Paul N. Sorrell, Lavely & Singer Professional Corporation, Los Angeles, CA, for Defendants.

*MEMORANDUM AND ORDER*

JAMES L. COTT, United States Magistrate Judge.

On December 17, 2010, A & E Television Networks, LLC ("A & E"), and D & D Television Productions, Inc. ("D & D") (together "Plaintiffs") filed this interpleader action seeking the Court's authorization to deposit certain funds claimed by Defendants Pivot Point Entertainment, LLC ("Pivot Point"), Duane Chapman, and Alice Barmore–Smith Chapman (together the "Defendants") into the Court's Registry and requesting that the Court enjoin Defendants from making any claim against Plaintiffs for recovery of these funds. In a decision dated January 18, 2011, Judge Gardephe allowed the action to proceed under 28 U.S.C. § 1335 and directed Plaintiffs to deposit $2,400,732.59, along with all additional royalties and fees as they become due, into the Court's Registry. By Order dated February 8, 2011, he referred this matter to me to determine what additional amounts, if any, Plaintiffs must deposit into the Court's Registry.

For the reasons set forth below, Plaintiffs are directed to deposit into the Court's Registry, by March 31, 2011, an amount equal to all compensation increases that have been granted to Mr. Chapman since December 19, 2005.

## I. BACKGROUND

The factual background to this interpleader action is set out more fully in Judge Gardephe's January 18, 2011 decision, *see A & E Television Networks, LLC v. Pivot Point Entm't, LLC,* No. 10 Civ. 9422(PGG), 2011 WL 182083, at *1–2

(S.D.N.Y. Jan. 18, 2011), and familiarity with the facts underlying this action is assumed. In short, this action arises out of long-running disputes among various parties associated with the A & E television show, "Dog the Bounty Hunter" (the "Program"), which stars Duane "Dog" Chapman ("Mr. Chapman") and his wife, Alice Barmore–Smith Chapman (together the "Chapmans"). *Id.* at *1.

In December 2003, Boris Krutonog and Hybrid Films, Inc. entered into a co-producer agreement (the "Hybrid Agreement") for the Program under which Hybrid Films, Inc. was to pay Krutonog fees for each episode of the Program. *Id.* The greater the number of episodes, the larger the fee he would receive. Declaration of Howard E. King filed February 1, 2011 Ex. 1, ¶ 2 ("King Decl.") (Dkt. No. 34). The Hybrid Agreement also provided, among other things, that "[p]ayments for additional episodes … shall be negotiated by Krutonog and Hybrid in good faith. It is understood, however, that Krutonog's increase in compensation (over the then current fee) shall be based upon the percentage increase given to Chapman for these additional episodes." *Id.* Ex. 1, ¶ 2(C).

In December 2005, Pivot Point, D & D, and A & E entered into an agreement (the "Pivot Point Agreement") pursuant to which Krutonog assigned all of his rights under the Hybrid agreement to Pivot Point and Hybrid assigned all of its rights to D & D. *A & E Television Networks, LLC,* 2011 WL 182083, at *1. The Pivot Point Agreement provided for, among other things, the fees that D & D was to provide to Pivot Point for additional seasons of the Program. King Decl. Ex. 4, ¶ 3. Those fees primarily consisted of payments tied to the number of episodes of the Program that aired, *id.* Ex. 4, ¶ 3(c)(i)-(iv), royalties from, among other

things, DVD sales of the Program, *id.* Ex. 2, ¶ 3(e), and an annual exclusivity payment of $15,000, *id.* Ex. 4, ¶ 3(f).

The Hybrid and Pivot Point Agreements are the ultimate source of the disputes among the parties that necessitated Plaintiffs' filing of this interpleader action: "Pivot Point ... claims that it is entitled to certain royalties and fees under the Pivot Point Agreement. The Chapmans, however, claim that the Pivot Point Agreement violates the California Talent Agencies Act ("TAA") and that they, and not Pivot Point, are entitled to the royalties and fees due under the Agreement." *A & E Television Networks, LLC,* 2011 WL 182083, at *1.

In his January 18, 2011 decision, Judge Gardephe allowed this interpleader action to proceed and ordered Plaintiffs to deposit $2,400,732.59 in the Registry of the Court. *Id.* at *8. The Court also ordered Defendants to respond to the proposed discharge order by February 1, 2011, and to explain whether they disagreed with Plaintiffs' calculation of the amount to be deposited in the Court's Registry and what, if any, discovery they would need to resolve the issue. *Id.* at *7.

On January 26, 2011, the Chapmans filed a brief in response to Plaintiffs' proposed discharge order in which they voiced no objection to Plaintiffs' calculation of the amount to be deposited in the Court's Registry. Opposition Brief to Plaintiffs' Proposed Discharge Order dated January 26, 2011 (Dkt. No. 31).[1] On February 1, 2011, Pivot Point filed a declaration and memorandum of law in response to Plaintiffs' proposed discharge order. Response of Defendant Pivot Point to Plaintiffs' Proposed Interpleader Order/Judgment ("Def.'s Resp.") (Dkt. Nos. 32–33);[2] King Decl. (Dkt. No. 34). After the Court granted them leave on February 2, 2011 to address some of the issues raised by Pivot Point in its filings, Plaintiffs filed a memorandum concerning its proposed interpleader order and judgment along with two declarations. Plaintiffs' Memorandum Concerning Proposed Order and Judgment dated February 4, 2011 ("Pls.' Mem.") at 5–6 (Dkt. No. 38); Declaration of David Houts dated February 4, 2011 (Dkt. No. 36); Declaration of Martin D. Edel dated February 4, 2011 (Dkt. No. 37). In the memorandum, Plaintiffs agreed to deposit into the Court's Registry; (1) series compensation for production cycle seven of the Program that has become due under ¶ 3(c) of the Pivot Point Agreement without prejudice to its claim that it does not owe Pivot Point this payment; (2) royalties under ¶ 3(e) of the Pivot Point Agreement for the 2nd and 3rd quarters of 2010; and (3) the 2011 exclusivity payment of $15,000 under ¶ 3(f) of the Pivot Point Agreement. Pls.' Mem. at 4 (Dkt. No. 38). On February 16, 2011, Plaintiffs deposited these amounts, totaling $545,708.83, in the Court's Registry. Order dated February 16, 2011 (Dkt. No. 40).

By Order dated February 8, 2011, the Court referred this action to me to determine what additional amounts, if any, must be deposited in the Court's Registry (Dkt. No. 39). On February 16, 2011, I held a telephone conference with the parties to determine what issues concerning the deposits into the Registry remained in dispute in light of Plaintiffs' additional contributions. Pivot Point and Plaintiffs identified two issues—whether Plaintiffs should deposit (1) an amount equal to all compensation increases that have been

---

1. In their submission, the Chapmans note that Mrs. Chapman was erroneously sued as Alice Barmore–Smith Chapman, rather than as Beth Chapman.

2. Docket entries 32 and 33 are the same document.

granted to Mr. Chapman since the signing of the Pivot Point Agreement; and (2) interest on all interpleaded amounts deposited in the Court's Registry to be calculated from the date each amount became due. During the conference, I ordered Plaintiffs and Pivot Point to provide the Court with additional briefing regarding the first issue they identified (the parties having already briefed the second in their prior submissions). By letter dated February 23, 2011, Plaintiffs provided a letter brief in response to this Order.[3] Pivot Point also filed its response on that date. Defendant Pivot Point's Brief Regarding Entitlement to Compensation Increases dated February 23, 2011 ("Def.'s Mem.") (Dkt. No. 43). I address these two outstanding issues below and conclude that (1) Plaintiffs shall deposit into the Court's Registry an amount commensurate to all compensation increases granted to Mr. Chapman since the December 19, 2005 signing of the Pivot Point Agreement; and (2) Plaintiffs need not deposit any prefiling interest.

## II. DISCUSSION

### A. Inadequate Deposit of Compensation

28 U.S.C. § 1335(a) provides federal district courts with original jurisdiction over interpleader actions in which money or property worth more than $500 is at stake, two or more adverse claimants of diverse citizenship claim or may claim that they are entitled to the money or property, and if "the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, . . . ." As the Second Circuit has ex-

plained, the deposit of such funds is a jurisdictional requirement:

> As a general rule, when a sum of money is involved, *a district court has no jurisdiction of an action of interpleader if the stakeholder deposits a sum smaller than that claimed by the claimants.* Section 1335 gives the district courts jurisdiction over such actions when a stakeholder has in his possession money or property 'of the value of $500 or more,' if 'two or more . . . claimants . . . are claiming or may claim to be entitled to such money or property' and if the stakeholder 'has deposited such money . . . into the registry of the court.' *This language means that the court will not have jurisdiction in an action of interpleader unless the stakeholder has deposited the entire sum in its possession which the claimants claim*

*Metal Transp. Corp. v. Pac. Venture S.S. Corp.,* 288 F.2d 363, 365 (2d Cir.1961) (emphasis added); *see also Fed. Ins. Co. v. Tyco Int'l Ltd.,* 422 F.Supp.2d 357, 396 (S.D.N.Y.2006) (collecting cases); *Pine Run Props., Inc. v. Pine Run Ltd.,* No. 90 Civ. 6289(PKL), 1991 WL 280719, at *7 (S.D.N.Y. Dec. 26, 1991) (no jurisdiction "if the plaintiff-stakeholder does not deposit all the property within its possession that is claimed by the defendant-claimants") (citations omitted). Accordingly, while "under rule interpleader a stakeholder may deposit the amount it believes to be in dispute, under statutory interpleader an interpleading plaintiff must deposit with the Court the highest amount claimed by defendants." *Nat'l Union Fire Ins. Co. v. Ambassador Grp., Inc.,* 691 F.Supp. 618, 621 (E.D.N.Y.1988) ("*National Union*") (internal quotations and citations omitted); *see also CNA Ins. Cos. v. Waters,* 926 F.2d

---

**3.** The Clerk of the Court is directed to docket this letter and make it part of the record of this case.

247, 250 n. 6 (3d Cir.1991) (in order for a court to have jurisdiction over an interpleader action, the stakeholder must pay "into the court registry the highest amount for which it ultimately may be liable") (citing 3A J. Moore, J. Lucas, & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 22.10 (19th ed. 1989)); *N. Am. Mktg. Corp. v. K. Gronbach & Assocs.*, 221 F.R.D. 296, 300 n. 3 (D.Conn.2002) (citations omitted); *Coopers & Lybrand, L.L.P. v. Michaels*, No. 94 Civ. 5643(RJD), 1995 WL 860760, at *9 (E.D.N.Y. Oct. 31, 1995) (citations omitted); 7 Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 1716 at 648–49 (3d ed. 2001) ("As a general rule, the stakeholder must deposit or post a bond in an amount equal to the largest claim. The fact that plaintiff … disputes some elements of one or more of the claims does not vitiate this requirement or justify the stakeholder making deductions from the deposit").

Here, as a threshold matter, Pivot Point contends that the Court's interpleader jurisdiction requires that the stakeholder—here, Plaintiffs—deposit in the Court's Registry "the maximum possible amount that could be presently owed." Def.'s Resp. at 3 (Dkt. No. 32). The maximum amount that could be presently owed by Plaintiffs, Pivot Point contends, includes an amount commensurate to all compensation increases that have been granted to Mr. Chapman since the signing of the Pivot Point Agreement. Def.'s Mem. at 1 (Dkt. No. 43). Pivot Point argues that it (as successor to Krutonog) is entitled to these increases under the Hybrid Agreement and that this entitlement was not modified by the Pivot Point Agreement. *Id.* at 2–4. Plaintiffs interpret the various agreements differently and contend that the express language of the Pivot Point Agreement bars Pivot Point's claim for increases in compensation *pari passu* with that of Mr. Chapman during seasons 4–6 of the Program. Plaintiffs' Letter to the Hon. James L. Cott dated February 23, 2011, at 2.

I need not interpret the Hybrid and Pivot Point Agreements here. Instead, I need only assess whether Plaintiffs have deposited in the Court's Registry "the entire sum in its possession which the claimants claim." *Metal Transp. Corp.*, 288 F.2d at 365 (stakeholder's claim to portion of disputed funds, or possible set-offs against the funds, should not be taken into account in determining the amount of the amount of deposit in the court's registry). This Plaintiffs have not done. Consequently, Plaintiffs shall deposit in the Court's Registry an amount commensurate to all compensation increases that have been granted to Mr. Chapman since the signing of the Pivot Point Agreement.

The court's decision in *National Union* is particularly instructive and supports the conclusion that I need not interpret the agreements at issue before deciding the amount Plaintiffs must deposit in the Court's Registry. There, the parties disputed the amount that the stakeholder was required to deposit into the court's registry in order for the court to retain jurisdiction over the action. *Nat'l Union*, 691 F.Supp. at 620. Each interpreted the language of the insurance policy at issue differently: the stakeholder contended that, under the policy, the three million dollar bond that it had deposited in the court's registry was sufficient while defendants contended that the policy obligated the stakeholder to deposit a six million dollar bond, the stakeholder's maximum possible liability. *Id.* The stakeholder moved for partial summary judgment to sustain the interpleader action, and one of the defendants in the case moved to dismiss the complaint for failure by the stakeholder to deposit a sufficient sum to invoke the court's interpleader jurisdiction. *Id.* at 619.

302

■ Without looking to the language of the insurance policy at issue, the court concluded that "[plaintiff] has deposited what it views as its maximum liability and not what the claimants claim. *On this basis alone*, this Court must conclude that it lacks jurisdiction over the instant interpleader action. Rather than dismiss the action, however, the Court will give [plaintiff] an opportunity to post the appropriate amount of six million dollars." *Id.* at 621–22 (citations omitted) (emphasis added). Although the court in *National Union* did go on to interpret the policy in the context of the stakeholder's motion for summary judgment, *see id.* at 622–24, as the above-quoted language suggests, in determining the amount of funds that a stakeholder must deposit in the court's registry to maintain interpleader jurisdiction, the dispositive inquiry is not whether the stakeholder has deposited what it views to be its maximum possible liability, but whether the stakeholder has deposited the amount the claimants claim. *Id.* at 621–22.

■ If a stakeholder wishes to dispute a defendant's entitlement to controverted funds that it has deposited into the registry, the dispute "will normally be decided during a trial of the merits and not at the stage of determining jurisdiction." *United Artists. Corp. v. Fields Prods., Inc.*, 363 F.Supp. 903, 905 (S.D.N.Y.1973) (no interpleader jurisdiction where stakeholder, a film distributor, disputed effect and interpretation of agreements between it and film's producer, and stakeholder deposited into court's registry amount that included set-offs of certain controverted funds) (citing 3A *Moore's Federal Practice* ¶ 22.10 at 3080).[4]

Plaintiffs will have the opportunity to make such a challenge at trial. In the meantime, however, Plaintiffs shall deposit into this Court's Registry an amount commensurate to all compensation increases granted to Mr. Chapman since the signing of the Pivot Point Agreement. If they have not done so already, Plaintiffs shall provide Pivot Point with all documents that will allow Pivot Point to substantiate

---

4. The decision in *United States Fire Insurance Co. v. Asbestospray, Inc.* arguably lends support to the contention that, in determining the amount of a deposit, a court should reach the merits of the underlying dispute by, for example, interpreting the meaning and effect of a contract. 182 F.3d 201, 210 (3d Cir.1999). There, the Third Circuit stated that "[t]he determination of the appropriate deposit, . . . . is not a mechanical process under which the court uncritically searches for the highest amount claimed by the adverse claimants and requires that amount to be deposited; rather, the determination 'depends upon the person who invokes the interpleader and what he asserts to be the subject matter of the controversy.' " *Id.* (citing *In re Sinking of M/V Ukola*, 806 F.2d 1, 5 (1st Cir.1986)). The facts of *Asbestospray* are, however, readily distinguishable from those presented here. In that case arising out of claims of entitlement to an insurance policy, the defendants argued that the plaintiffs should have deposited $25 million in the registry because that amount reflected the entire amount of the insurance

proceeds under the policy at issue. *Id.* at 210. The Third Circuit disagreed, reasoning that only $3.88 million—the unexhausted proceeds of the insurance policy—and not the policy limit of $25 million itself was in controversy as the funds that had already been paid out of the policy were not part of the action as it was pleaded. *Id.*

Here, on the other hand, the additional funds that Pivot Point seeks to have Plaintiffs deposit into the Court's Registry—all increases in compensation that have been granted to Mr. Chapman since the signing of the Pivot Point Agreement—are based on provisions in the Hybrid and Pivot Point Agreements and are part of the interpleader action as it was pleaded. *See, e.g.,* Complaint dated December 17, 2010 ¶¶ 23–24, 37 (Dkt. No. 1). Indeed, the Pivot Point Agreement expressly provides that the term of the Hybrid Agreement, subject to the provisions of the Pivot Point Agreement, shall continue "for the life of the show, . . . ." King Decl. Ex. 4, at ¶ 3(b) (Dkt. No. 34).

the compensation increases and thus verify the accuracy of the amount of the deposit.

## B. Deposit of Pre-filing Interest is not Required

Pivot Point next contends that Plaintiffs should deposit into the Court's Registry interest at a rate of nine percent per annum on all amounts claimed, to be calculated from the date the payments became due. Def.'s Resp. at 4–5 (Dkt. No. 32). Plaintiffs must deposit the interest, Pivot Point argues, because Plaintiffs have delayed in filing this interpleader action. *Id.* at 5. Plaintiffs respond, among other things, that pre-filing interest is owed by a stakeholder only when the stakeholder excessively delays filing the interpleader action and that there was no such excessive delay here. Pls.' Mem. at 5–6 (Dkt. No. 38). I agree and conclude that Plaintiffs are not required to deposit pre-filing interest on any interpleaded funds that they have placed in the Court's Registry.

 "[I]t it is well recognized that interpleader is an equitable remedy," *Am. Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir.1990), and that, as such, whether to order a party to deposit pre-filing interest in interpleader actions is firmly within the discretion of the court. *See, e.g., Federal Practice & Procedure* § 1716 at 650–51 (discussing court's discretion to direct "a dilatory stakeholder to deposit interest for the pre-action period during which the stakeholder failed to seek interpleader or make payment").[5] Accordingly, "[p]refiling interest is owed by a disinterested stakeholder in an interpleader action only when it improperly and excessively delays the filing of the interpleader action." *Avant Petroleum, Inc. v. Banque Paribas,* 652 F.Supp. 542, 544 (S.D.N.Y.1987) (citing

*John Hancock Mut. Life Ins. Co. v. Doran,* 138 F.Supp. 47, 49–50 (S.D.N.Y.1956) ("*John Hancock*"), *Aetna Life Ins. Co. v. Du Roure,* 123 F.Supp. 736, 741 (S.D.N.Y. 1954), and *N.Y. Life Ins. Co. v. Cooper,* 76 F.Supp. 976, 979 (S.D.N.Y.1944)), *aff'd,* 853 F.2d 140, 145 (2d Cir.1988); *cf. Conn. Gen. Life Ins. Co. of N.Y. v. Cole,* 821 F.Supp. 193, 201 (S.D.N.Y.1993) (concluding, in interpleader action brought pursuant to Fed. R.Civ.P. 22, that stakeholder's 21 month delay in filing interpleader after learning of conflicting claims to life insurance proceeds warranted award of interest) (citing *Avant,* 652 F.Supp. at 544); *Bauer v. Uniroyal Tire Co.,* 630 F.2d 1287, 1290 (8th Cir.1980) (concluding, in rule interpleader action, that stakeholder's nearly year and a half delay in filing interpleader after learning of competing claims to set of tires warranted award of interest).

The decision in *John Hancock* provides further insight into the circumstances in which it would be appropriate for a court to order a stakeholder to deposit pre-filing interest into its registry. There, an insurance company did not file a statutory interpleader action until 10 months after it had received notice of an adverse claim to the proceeds of a life insurance policy. *John Hancock,* 138 F.Supp. at 49–50. Although the company deposited the disputed proceeds into the court's registry, one of the claimants argued that the court should also require the company to deposit interest on that amount in light of the company's delay in bringing the interpleader. *Id.* at 49. The court agreed, concluding that if the company "sought to take advantage of this equitable relief, it should have acted with a reasonable degree of promptness and with reasonable

5. State law governs the award of prejudgment interest in interpleader actions based on diversity of citizenship. *See, e.g., Griffin v. McCoach,* 313 U.S. 498, 503, 61 S.Ct. 1023, 85 L.Ed. 1481 (1941) (federal courts sitting in diversity will apply the forum's conflict of law rules in interpleader actions). New York law thus applies here.

diligence. Certainly, within one month after receiving the claim and realizing its predicament, it should have decided on a course of action," *Id.*

██ Here, Plaintiffs acted with a reasonable degree of promptness and with reasonable diligence in filing this action; there has been no excessive or undue delay. Indeed, Judge Gardephe stated as much in his earlier decision:

> Although Pivot Point notes that the New York Action was filed in May 2008, and argues that Plaintiffs delayed two and a half years in bringing this interpleader action, Plaintiffs' motion to dismiss or stay the New York Action was not resolved until June 2010. Once that motion was denied, it became clear that Plaintiffs were truly at risk of "duplicative litigation and multiple liability." *Plaintiffs filed their first interpleader action [in the Central District of California] within one month of the New York court's denial of their motion to stay or dismiss, and filed this action one week after the California court's dismissal for improper venue.* There has been no undue delay.

*A & E Television Networks, LLC,* 2011 WL 182083, at *7 (emphasis added). Accordingly, I conclude that Plaintiffs need not deposit pre-filing interest on any interpleaded funds that they have placed in the Court's Registry.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs are directed to deposit into the Court's Registry, by March 31, 2011, an amount equal to all compensation increases that have been granted to Mr. Chapman since the signing of the Pivot Point Agreement. If they have not done so already, Plaintiffs shall provide Pivot Point with all documents that will allow Pivot Point to substantiate the compensation increases and thus verify the accuracy of the amount of the deposit.

Consistent with Judge Gardephe's previous opinion, Plaintiffs shall continue to deposit into the Court's Registry all additional fees and royalties due under the Pivot Point Agreement as those amounts become due.

**SO ORDERED.**