BULSARA, United States Magistrate Judge:
This action was initiated by a stock transfer agent in an attempt to resolve competing claims to the securities of Exlites Holdings International, Inc. ("Exlites")-a Utah-based consumer healthcare and durable medical supply company. The transfer agent, Madison Stock Transfer, Inc. ("Madison Stock"), brought this action to extricate itself from the competing directions it received regarding 300 million shares of Exlites-one of which directs it to issue the shares, another which directs it to refrain from doing so. Before this Court is the threshold question of whether *468 this case can be maintained as an interpleader action and, if so, whether personal jurisdiction exists over the former president of Exlites-Mark Julian ("Julian")-who claims entitlement to the shares.
Madison Stock commenced this action on June 5, 2018 against Exlites, Scorpion Bay Holdings, Inc. ("Scorpion Bay"), Soleeze Wave ("Soleeze"), Julian, Chauncey Washington ("Washington"), Claire Singleton ("Singleton"), Allegro Holdings, S.A. ("Allegro Holdings"), Azure Pro Trading, Ltd. ("Azure Pro"), Citrine Enterprises, Ltd. ("Citrine Enterprises"), Sandstone Consulting, Inc. ("Sandstone Consulting"), and Zenlux, Ltd. ("Zenlux") pursuant to 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22, to have this Court resolve competing directions regarding the issuance and cancellation of Exlites stock. (Compl., Dkt. No. 1). Madison Stock's Complaint also makes an abuse of process claim against Julian and Washington and a claim for "account stated" against Exlites. (Id. ¶¶ 67-80). On July 13, 2018, Julian filed a motion to dismiss the claims against him based on lack of personal jurisdiction and improper venue. (See Mot. to Dismiss, Dkt. No. 7 ("Julian Mot.") ). For the reasons stated below, the Court grants in part and denies in part the motion to dismiss; to maintain this action, Madison Stock must provide a deposit or bond equivalent and show that venue is proper in the Eastern District of New York.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Madison Stock is a New York corporation that has been the transfer agent for Exlites since around April 24, 2014.[1] (Compl. ¶¶ 2, 27). Madison Stock "performs all its functions within" Kings County, New York, which it considers to be its principal place of business, and it has no other offices and "does not travel for the performing of transfer agent services." (Id. ¶¶ 19-20).
Exlites is a New Mexico corporation with is principal place of business in Utah. (Id. ¶ 3). It is the issuer of the stock in question in this action. (Id. ). According to its website, Exlites distributes medical equipment and "does contract manufacturing for medical products." About Us , Exlites Holdings International, Inc., https://exlitesholdings.com/about-us/ (last visited Mar. 21, 2019). Several of the other Defendants are international business entities; Allegro Holdings, Azure Pro, Citrine Enterprises, Sandstone Consulting, and Zenlux are all Belize entities with the same principal place of business at 508 Marina Towers, Belize City, Belize. (Compl. ¶¶ 1, 10-14). Scorpion Bay is also a Belize entity but has its principal place of business in the Bahamas. (Id. ¶ 9). Soleeze is a Florida corporation with its principal place of business in Florida. (Id. ¶ 7). The Complaint does not indicate the nature of the business or industry in which these Defendants operate.
The individual Defendants are all current or former officers or shareholders of Exlites. Julian is a citizen of Florida and the former president of Exlites. (Id. ¶¶ 5, 30, 33). Julian also controlled the Defendant *469 corporation Soleeze. (Id. ¶ 29). Washington is also a citizen of Florida. (Compl. ¶ 6). As described below, both Julian and Washington obtained default judgment awards for the issuance of 200 million and 100 million shares, respectively, of Exlites common stock in a Florida state court proceeding brought against Exlites. (Id. ¶¶ 23-24). Singleton is a citizen of Texas who, at the time of the Complaint, was "a majority holder in and authority of record for Defendant Exlites." (Id. ¶ 25).
The history of the proceedings before the commencement of the federal action is extensive. The following narrative is drawn from the Complaint and the attached exhibits, and is presented to show the alleged competing claims faced by Madison Stock.
In 2014, Madison Stock took over as transfer agent for Exlites from Pacific Stock Transfer. (Id. ¶ 27). Soon thereafter, Michael Dillon ("Dillon"), the sole officer and director of Exlites, issued 25 million shares of its stock to Soleeze, the entity controlled by Julian, "in preparation for a merger/acquisition" with Soleeze. (Id. ¶¶ 28-29). Julian became the president of Exlites and Dillon became the corporate secretary, and on May 14, 2015, Exlites sent a resolution to Madison Stock to issue 20 million shares of stock to Scorpion Bay. (Compl. ¶¶ 30, 32; see Scorpion Bay Issuance, attached as Ex. F to Compl., Dkt. No. 1). Around the same time, Dillon held a shareholder vote to unwind Exlites's merger with Soleeze and remove Julian as an officer and director "for failure to fulfill the terms, agreements and expectations of the merger agreements." (Compl. ¶ 33). It is unclear from the Complaint what the results of this vote were, though it appears that Julian remained on as an Exlites officer.[2] Weeks later, on June 4, 2015, Julian and Singleton were elected to Exlites's Board of Directors and Dillon was removed from his position as secretary. (Id. ¶ 35). On October 3, 2016, Singleton removed Julian as an officer and director of Exlites using her "super voting block," which had been recognized by a corporate resolution signed by Singleton and Julian. (Id. ¶¶ 36-37).
Exlites and Singleton are now attempting to cancel a series of earlier Exlites share issuances: 20 million shares issued to Scorpion Bay on May 14, 2015, 15 million shares issued to the five Belize entities,[3] and 25 million shares issued to Soleeze on December 19, 2014. (Id. ¶¶ 38-40). The Complaint does not explain how and when Exlites or Singleton communicated these requests to Madison Stock.[4]
In late 2016, Julian and Washington each received a default judgment in Florida state court, Pasco County, against Exlites in cases alleging, among other things, breach of contract. (Id. ¶¶ 22-24 (case numbers 2016-CA-2400-WS and 2016-CA-2413-WS, *470 respectively); see Florida Default Judgment dated Nov. 1, 2016, attached as Ex. M to Compl., Dkt. No. 1 ("Julian Default J."); Florida Default Judgment dated Sept. 28, 2016, attached as Ex. N to Compl., Dkt. No. 1 ("Washington Default J.") ). The judgment ordered "the transfer agent of Defendant, Exlites Holding International, Inc." to issue 200 million shares of stock to Julian and 100 million shares to Washington. (Julian Default J.; Washington Default J. (emphasis omitted) ). In May 2018, Madison Stock received correspondence from counsel for Julian asking it to issue the 300 million shares of stock associated with these default judgments, which Madison Stock indicated it would do upon the docketing of the judgments in New York. (Compl. ¶ 51). Counsel for Julian subsequently demanded Madison Stock issue the shares immediately rather than wait for docketing in New York. (Id. ; see Notice of Court Order dated May 30, 2018, attached as Ex. O to Compl., Dkt. No. 1 ("Julian Letter") ). This demand also included threats of suit for wrongful refusal to transfer. (Compl. ¶ 51; see Julian Letter at 2 ("[U]nless the demand we previously issued ... is complied with in the next 10 days, we will seek leave of Court in the ... Florida Action to amend the Complaint to name Madison as a defendant and seek damages from it co-extensive with the issuer's liability.") (emphasis omitted) ).[5]
Madison Stock consulted with Singleton, the majority shareholder, about the issuance of these shares. (Compl. ¶ 25). Singleton had "no knowledge regarding the [Florida] litigations." (Id. ). Upon further investigation, Madison Stock discovered that Julian had essentially served himself in his Florida default judgment litigation, because he served Exlites via the Florida Secretary of State. The Secretary of State served the party Exlites had elected to receive notice: Julian. (Id. ¶ 26). In an email to Madison Stock's attorney from Singleton, Exlites objected to the issuance of the 300 million shares to Julian and Washington on June 1, 2018. (Id. ¶ 53; see Exlites Objection Email, attached Ex. Q to Compl., Dkt. No. 1 ("June Exlites Objection") ).
Madison Stock alleges that it has at least two claims for which there are competing directives: (1) a directive from Julian and Washington to issue 300 million shares of Exlites to them; an objection from Exlites to that issuance, and a counter-directive that those shares not be issued; and (2) the shares of Exlites previously issued to Soleeze, Scorpion Bay, and the Belize entities, which Madison Stock was instructed by Singleton to cancel.
Madison Stock asks this Court to decide its obligation as to the issuance or cancellation of the shares described above, namely the 200 million shares to Julian, the 100 million shares to Washington, the 25 million shares pertaining to Soleeze,[6] and the 15 million shares pertaining to the Belize entities.[7] (Request for Relief, attached to *471 Compl. ("Req. for Relief") ¶¶ 66.1-66.4).[8]
In addition to the interpleader request, the Complaint asserts two causes of action: abuse of process against Julian and Washington and "account stated" pertaining to Exlites's payments due to Madison Stock for transfer activity. (See Compl. ¶¶ 67-80). As to the abuse of process claim, Madison Stock alleges Julian and Washington used their default judgments in an attempt to gain control of Exlites, putting Madison Stock in a position of conflicting liability, and attempted to use the default judgments to extort and threaten Madison Stock. (Id. ¶¶ 70-73). Madison Stock seeks $ 6,600,000 for this claim, which it alleges is the value of Julian and Washington's attempted extortion. (Id. ¶ 75; see also id. ¶ 21 (stating that the 300 million shares of stock have a "mark-to-market value of $ 6,600,000") ).[9] As for the account stated claim, Madison Stock seeks payment of $ 10,931.36 from Exlites for "various transfers and activities" that have allegedly not been objected to. (Id. ¶¶ 77-78).
Madison Stock filed proof of service on the docket as to Exlites, Julian, and Singleton, (Acknowledgements of Service, Dkt. Nos. 9, 10; Summons Returned Executed, Dkt. No. 16), and asked that the Court excuse service on Allegro Holdings, Azure Pro, Citrine Enterprises, Sandstone Consulting, and Zenlux, which the Court denied. (Req. for Waiver of Service dated Aug. 9, 2018, Dkt. No. 15; Order dated Aug. 28, 2018, Dkt. No. 24). Madison Stock filed Summonses Returned Unexecuted as to Washington and Soleeze. (Summonses Returned Unexecuted, Dkt. Nos. 17, 18). As of the date of this Order, only Defendants Julian, Singleton, and Exlites have appeared.
On July 13, 2018, Julian filed a motion to dismiss under Rule 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. (See Julian Mot.). Madison Stock responded on July 30, 2018. (See Resp. in Opp'n to Mot. to Dismiss, Dkt. No. 13 ("Madison Stock Resp. I") ). The Court held oral argument on the motion on January 17, 2019 at which counsel for Madison Stock and Julian were present. (Minute Entry dated Jan. 17, 2019; see Tr. of Mot. to Dismiss Hr'g on Jan. 17, 2019, Dkt. No. 37 ("Jan. 17 Tr.") ). Madison Stock filed a follow-up memorandum, as permitted by the Court, in opposition to Julian's motion. (See Mem. in Opp'n dated Feb. 1, 2019, Dkt. No. 36 ("Madison Stock *472 Resp. II"); Minute Entry dated Jan. 17, 2019).
The Court subsequently directed parties to file a status report "on the Florida cases referenced in their papers, namely [the default judgments obtained by Julian and Washington]" and on any other litigation "that asserts a claim on the property subject to this interpleader action." (Order dated Mar. 6, 2019). Julian filed copies of the docket from three Florida litigations, only one of which is currently open. (See Notice dated Mar. 13, 2019, Dkt. No. 38 ("Julian Florida Update") at 1). The open litigation, Case No. 2016-CA-2400-WS, is the litigation in which Julian obtained a default judgment against Exlites for 200 million shares of stock. (See id. ). The case was re-opened on May 10, 2018, one and a half years after the default judgment was issued, when Julian attempted to amend his complaint to add Madison Stock as a defendant. (See Case No. 2016-CA-2400-WS docket sheet, attached to Julian Florida Update, Dkt. No. 38 ("Julian Default Docket"); see Mot. to Amend dated June 5, 2018, attached as Ex. E to Status Report dated Mar. 20, 2019, Dkt. No. 39). The court denied the motion, but the case remains open. (See Julian Default Docket).
DISCUSSION
"Interpleader is a procedural device used to resolve conflicting claims to money or property. It enables a person or entity in possession of a tangible res or fund of money (the 'stakeholder') to join in a single suit two or more 'claimants' asserting mutually exclusive claims to that stake." 4 James Wm. Moore et al., Moore's Federal Practice § 22.02[1] (3d ed. 2019). "Interpleader protects a stakeholder from having to defend against multiple suits and from the risk of multiple liability or inconsistent obligations." Great Wall de Venezuela C.A. v. Interaudi Bank , 117 F.Supp.3d 474, 482 (S.D.N.Y. 2015) (quotations omitted); see also Wash. Elec. Coop., Inc. v. Paterson, Walke & Pratt, P.C. , 985 F.2d 677, 679 (2d Cir. 1993) ("Rooted in equity, interpleader is a handy tool to protect a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund."). A party "may bring suit if [it] legitimately fears multiple vexation directed against a single fund" and to be "relieved from the obligation of determining which litigant has a superior claim." CF 135 Flat LLC v. Triadou SPV S.A. , No. 15-CV-5345, 2016 WL 1109092, at *2 (S.D.N.Y. Mar. 18, 2016) (quotations omitted).
Interpleader actions have two stages: (1) an initial determination that either the rule or statutory requirements have been met and (2) subsequent adjudication of the adverse claims to the interpleader funds or property. Great Wall de Venezuela C.A. , 117 F.Supp.3d at 482 ("At the first stage, the court determines whether interpleader is appropriate on the facts of the case. If the court determines that interpleader is warranted, the court continues to stage two, at which it adjudicates the adverse claims and distributes the disputed stake to one or both of the claimants."); see also Hartford Life Ins. Co. v. Simonee , No. 14-CV-7520, 2015 WL 8490998, at *2 (E.D.N.Y. Dec. 10, 2015) ("Whether [an interpleader] is brought by rule or statute, courts adopt a two-step approach to evaluating the action."). The motion to dismiss before the Court implicates only the first stage.
Madison Stock brings this interpleader action under both Federal Rule of Civil Procedure 22 ("rule interpleader") and the Federal Interpleader Act, 28 U.S.C. § 1335 ("statutory interpleader"). (Madison Stock Resp. II ¶ 1; Jan. 17 Tr. at 2:20-22). "The two types of interpleader serve the same purpose and perform the *473 same function, and differ only in their requirements for subject matter jurisdiction, venue, and service of process." Great Wall de Venezuela C.A , 117 F.Supp.3d at 482 n.11 (citing Moore's Federal Practice § 22.02[3] ). Under both rule and statutory interpleader, the party bringing the interpleader claim bears the burden of meeting the respective requirements. See CF 135 Flat LLC , 2016 WL 1109092, at *2 (rule interpleader); United States v. Barry Fischer Law Firm, LLC , No. 10-CV-7997, 2011 WL 31545, at *3 (S.D.N.Y. Jan. 5, 2011) (statutory interpleader) ("The party who must satisfy these requirements ... is the party who files the interpleader complaint, not any particular party making a claim on the fund[.]").
Julian's motion to dismiss is based on the absence of personal jurisdiction. Resolving that motion, however, requires the Court to determine whether the requirements of rule or statutory interpleader are satisfied. Julian is a resident of Florida. If Madison Stock's action is one for rule interpleader, then this Court must determine whether jurisdiction over Julian is consistent with the law of the forum state, i.e. New York, and whether exercising jurisdiction over him is consistent with due process. See Salomon Smith Barney, Inc. v. McDonnell , 201 F.R.D. 297, 303 (S.D.N.Y. 2001) ("The determination of whether this Court has personal jurisdiction over the defendants [in a rule interpleader action] is a two step process. First, one must look to the law of the forum state to determine whether the exercise of personal jurisdiction is appropriate. If it is, then one must assess whether such exercise of jurisdiction 'comports with the requisites of due process.' ") (quoting Bensusan Rest. Corp. v. King , 126 F.3d 25, 27 (2d. Cir. 1997) ). On the other hand, if Madison Stock's action is a statutory interpleader action, then no such analysis is required-the federal interpleader statute provides for nationwide service of process, and service on Julian in Florida establishes this Court's personal jurisdiction over him. See JPMorgan Chase Bank, N.A. v. Maurer , No. 13-CV-3302, 2015 WL 4566686, at *6 (S.D.N.Y. July 27, 2015) ("[T]o the extent that Zauflick suggests we lack personal jurisdiction, she is clearly wrong. The interpleader statute provides for nationwide service of process, see 28 U.S.C. § 2361 (2012), and personal jurisdiction is not constitutionally unreasonable when necessary to vindicate the interstate system's interest in obtaining the most efficient resolution of controversies.") (quotations omitted).
There is another reason to determine whether the requirements of rule and statutory interpleader action have been met: this Court's subject matter jurisdiction.[10] If Madison Stock's action is one for rule interpleader, the Court must be satisfied there is an independent basis for subject matter jurisdiction-either through federal question or diversity of citizenship jurisdiction. "[A] plaintiff invoking rule interpleader ... must plead and prove an independent basis for subject-matter jurisdiction because Rule 22 is merely a procedural device." Metro. Life Ins. Co. v. Carey , No. 16-CV-3814, 2017 WL 4351512, at *3 (E.D.N.Y. Sept. 29, 2017) (quotations omitted); see CF 135 Flat LLC , 2016 WL 1109092, at *2 n.1 ("Unlike statutory interpleader, *474 rule interpleader requires a plaintiff to establish subject matter jurisdiction based either upon a general federal question or diversity of citizenship.") (quotations omitted). On the other hand, if Madison Stock can satisfy the requirements of statutory interpleader, doing so would establish the existence of subject matter jurisdiction. See Hartford Cas. Ins. Co. v. Lexington Ins. Co. , No. 14-CV-8060, 2016 WL 1267801, at *2 (S.D.N.Y. Mar. 30, 2016) ("Title 28, United States Code, Section 1335 grants original jurisdiction to the district courts over interpleader actions under certain circumstances.").[11]
The Court, therefore, proceeds by first determining whether the requirements for rule interpleader have been satisfied, and, if so, whether the Court has personal jurisdiction over Julian, and second by conducting the same analysis for statutory interpleader. Because Julian has styled his motion as one to dismiss for lack of personal jurisdiction, the Court must accept the allegations in the Complaint as true at this stage of the case. See Troma Entm't, Inc. v. Centennial Pictures Inc. , 729 F.3d 215, 217 (2d Cir. 2013) ("[A] complaint will survive a motion to dismiss for want of personal jurisdiction so long as its allegations, taken as true, are 'legally sufficient allegations of jurisdiction.' ") (quoting Penguin Grp. (USA) Inc. v. Am. Buddha , 609 F.3d 30, 35 (2d Cir. 2010) ).[12]
I. Rule Interpleader
A. Elements for Rule Interpleader
1. Subject Matter Jurisdiction
Federal Rule of Civil Procedure 22 permits a plaintiff to join as defendants "[p]ersons with claims that may expose [the] plaintiff to double or multiple liability." Fed. R. Civ. P. 22(a)(1). However, first, "to assert rule interpleader, a traditional basis for subject matter jurisdiction must exist." 6247 Atlas Corp. v. Marine Ins. Co., Ltd., No. 2A/C , 155 F.R.D. 454, 465 (S.D.N.Y. 1994). That is, there must be either diversity of citizenship jurisdiction or federal question jurisdiction. Allstate Indem. Co. v. Collura , No. 15-CV-5047, 2017 WL 1076328, at *4 (E.D.N.Y. Mar. 22, 2017) ("Under Rule 22, the plaintiff must demonstrate either diversity jurisdiction or federal question jurisdiction."), modified on other grounds , 2018 WL 718398 (Feb. 5, 2018).
*475 As explained below, Madison Stock has established diversity of citizenship jurisdiction for rule interpleader.
"When the Rule 22 interpleader action is brought pursuant to diversity jurisdiction, the amount in controversy must exceed $ 75,000, exclusive of interest and costs. There must also be complete diversity of citizenship between the stakeholder and claimants, although there need not be diversity between the claimants themselves." Simonee , 2015 WL 8490998, at *2 (quotations and citation omitted); 6247 Atlas Corp. , 155 F.R.D. at 465 ("Jurisdiction exists under Rule 22 when the citizenship of the stakeholder is diverse from that of all of the claimants, even if all the claimants share the same citizenship.").
Madison Stock is a citizen of New York, where it is incorporated and has its principal place of business. (Compl. ¶ 2). None of the claimants are New York citizens. Exlites is a citizen of New Mexico and Utah, Soleeze is a citizen of Florida, and Scorpion Bay is a citizen of Belize and the Bahamas. (Id. ¶¶ 3, 7, 9). Allegro Holdings, Azure Pro, Citrine Enterprises, Sandstone Consulting, and Zenlux are all citizens of Belize. (Id. ¶¶ 10-14).[13] Julian and Washington are citizens of Florida and Singleton is a citizen of Texas. (Id. ¶¶ 4-6). As such, there is complete diversity between the stakeholder and each of the claimants.[14] See Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co. , 772 F.3d 111, 117-18 (2d Cir. 2014) (" 28 U.S.C. § 1332... requires 'complete diversity,' i.e. all plaintiffs must be citizens of states diverse from those of all defendants."); St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply , 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.") (citing Strawbridge v. Curtiss , 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) ).
As to the amount in controversy requirement, Madison Stock argues the amount in controversy exceeds $ 75,000 because of the value of the stock in dispute. (See Jan. 17 Tr. at 24:22-24). The Complaint alleges that as of May 21, 2018, fifteen days before the filing of the Complaint, the value of the 335 million disputed shares,[15] at $ 0.022 per share, was $ 7,370,000. (See Compl. ¶ 21). Although a party invoking diversity jurisdiction has the burden of showing that the claim meets the $ 75,000 threshold, there is " 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.' " Scherer v. Equitable Life Assurance Soc'y of U.S. , 347 F.3d 394, 397 (2d Cir. 2003) (quoting *476 Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc. , 166 F.3d 59, 63 (2d Cir. 1999) ). "[T]o overcome this presumption, the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." LG Capital Funding, LLC v. PositiveID Corp. , No. 17-CV-1297, 2017 WL 2556991, at *4 (E.D.N.Y. June 12, 2017) (quoting Wolde-Meskel, 166 F.3d at 63 ).
Julian argues that the $ 6.6 million sought from Julian and Washington for the abuse of process claim is speculative; however, he does concede that the value of the hundreds of millions of shares in dispute exceeds $ 75,000. (See Jan. 17 Tr. at 26:14-18 ("The Court: Do you have any reason to believe that if I take 300 million times the ... share price in the complaint ... I don't get above $ 75,000? [Julian's Attorney]: No, Your Honor.") ). This is enough to meet the jurisdictional threshold.
The Court therefore has subject matter jurisdiction over the rule interpleader action based on diversity of citizenship. See John v. Sotheby's, Inc. , 141 F.R.D. 29, 37 (S.D.N.Y. 1992) ("[T]o entertain a rule interpleader action, a traditional basis for subject matter jurisdiction must exist. In this case, Dr. Nava is a California resident, plaintiff is a Wisconsin resident and defendant is a New York corporation with its principal place of business in New York. Accordingly, this Court has subject matter jurisdiction because complete diversity exists and the amount in controversy exceeds [the threshold requirement].") (citations omitted).[16]
2. Claims that May Expose the Stakeholder to Double or Multiple Liability
If the jurisdictional requirements of rule and statutory interpleader are met, "the court next examines whether the interpleader action is appropriate by assessing whether the plaintiff has a real and reasonable fear of double liability or vexatious, conflicting claims against the single fund, regardless of the merits of the competing claims." Simonee , 2015 WL 8490998, at *3 (quotations omitted); accord Carey , 2017 WL 4351512, at *3 (rule interpleader); Metro. Life Ins. Co. v. Mitchell , 966 F.Supp.2d 97, 102 (E.D.N.Y. 2013) (statutory interpleader). As long as the stakeholder has a good faith basis to fear double liability, interpleader is appropriate; "[t]he court need not analyze the merits of the claims because the stakeholder should not be obliged at its peril to determine which of the two claimants has the better claim." Carey , 2017 WL 4351512, at *3 (quotations omitted); see also CF 135 Flat LLC , 2016 WL 1109092, at *2 ("[T]he propriety of an interpleader action does not depend upon the merits of the competing claims, and fear of multiple liability need not be supported by an existing legal action. Instead, the interpleader plaintiff need only have a good faith concern about duplicitous litigation and multiple liability if it responds to the requests of certain *477 claimants and not to others.") (quotations and citations omitted).[17]
Madison Stock contends that there are two sets of stock that are subject to competing claims and which this Court should resolve via interpleader. First is the 300 million shares of Exlites, which Julian and Washington are asking Madison Stock to issue,[18] and which Exlites is directing Madison Stock not to issue. Madison Stock takes direction from Exlites, since it is the company's designated transfer agent. But Julian and Washington possess default judgments they obtained from litigations against Exlites, in which the Court directed Madison Stock to issue the 300 million shares. Further complicating matters, Julian filed his lawsuit when he was an Exlites officer, but the default judgment was issued after he was removed. In any event, Madison Stock cannot simultaneously issue and not issue the same share certificates. This is a set of competing claims brought against a transfer agent over the same property and is suitable for interpleader relief. Cf. Arnold v. KJD Real Estate, L.L.C. , 120 F.Supp.3d 832, 840 (S.D. Ill. 2015) ("There is also a dispute between two adverse claimants: KJD and the Corporate Defendants. Each claimant has an asserted basis for a claim of right to the stock. KJD contends that it has superior title to the stock based on the Stock Purchase Agreement it entered into with Arnold in April 2007. On the other hand, the Corporate Defendants allege that their rights are superior based on the 2008 state court default judgment and provisions of the Illinois Commercial Code. The determination of such multiple liabilities is exactly what an interpleader suit is designed to resolve."), aff'd , 682 F. App'x 483 (7th Cir. 2017).
The second is the stock that Exlites previously issued to Soleeze, Scorpion Bay, and the Belize entities. Madison Stock has not identified any competing claim for these shares. It alleges that it received instructions to cancel these shares. However, it does not cite or allege any contravening instructions about the cancellation. The Court could surmise that the holders of these shares, including the un-served and non-appearing defendants, would object to this cancellation. But their failure to appear and object to the cancellation suggests that Madison Stock is not subject to conflicting claims over these shares. And while a conflicting claim to property need not be concrete and final for a stakeholder to initiate an interpleader action, it cannot be based on the Court's speculation. It at least must be in the Complaint. It is not. See, e.g., Hausler v. JP Morgan Chase Bank, N.A. , 141 F.Supp.3d 248, 253 (S.D.N.Y. 2015) (denying interpleader relief because "[t]he Court finds that JPM Chase has no legitimate fear of multiple liability with regard to the Fundacion. First, ... as of yet no bona fide representative of the Fundacion has come forward. Now, even after the Parties' efforts to locate and notify Fundacion claimants, ... JPM Chase has still *478 been unable to identify any alleged representative of the Fundacion who asserts or reasonably could assert any interest in the Blocked Assets. The failure by any representative of the Fundacion to respond to the Interpleader Petition-even in these circumstances-is not in itself conclusive, but is certainly significant evidence that JPM Chase cannot legitimately fear a competing claim from the Fundacion to the Blocked Assets.") (quotations and citations omitted) (alterations omitted). Therefore, absent any amended complaint identifying competing obligations to these shares, this Court will not resolve the question of whether the shares in the possession of Soleeze, Scorpion Bay, or the Belize entities should be cancelled.
B. Personal Jurisdiction
Having determined that Madison Stock has satisfied the requirements for rule interpleader, the Court turns to whether it has personal jurisdiction over Julian, a Florida resident. Rule 22 has no special service of process rule or separate provision for personal jurisdiction.
There are two types of personal jurisdiction: general and specific. "When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." Helicopteros Nacionales de Colombia, S.A. v. Hall , 466 U.S. 408, 414 n.9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) ; accord Burger King Corp. v. Rudzewicz , 471 U.S. 462, 473 n.15, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). This occurs when, for example, the defendant is domiciled in the forum state. See Walden v. Fiore , 571 U.S. 277, 283 n.6, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) (" '[G]eneral' or 'all purpose' jurisdiction ... permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (e.g. , domicile)."). " 'Specific' or 'case-linked' jurisdiction depends on an affiliation between the forum and the underlying controversy (i.e. , an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." Id. (quotations and alterations omitted).
Julian contends that this Court lacks personal jurisdiction over him because he does not have sufficient contacts with New York, the conduct he is alleged to have engaged in is not enough to warrant the exercise of jurisdiction over him, and doing so "would not comport with due process under either the federal or New York constitutions." (Julian Mot. at 10).[19] Madison Stock argues that the Court has personal jurisdiction over Julian because of two acts: (1) Julian's request that Madison Stock issue the shares awarded to him in his Florida default judgment; and (2) the allegedly tortious threat of legal action should Madison Stock not issue him such shares. (See Madison Stock Resp. I. ¶ 13 ("Defendant Julian purposely availed himself of New York jurisdiction when he used the instrumentality of the mails to send correspondence demanding activities be performed within the State of New York[.]"); id. ¶ 11 ("[The letter from Julian's attorney] is a tortious act without the State of New York reasonably foreseeable to have consequences within the State of New York[.]"); see also Jan. 17 Tr. at 11:12-15). Both the request and the alleged threat are contained in the letter sent to *479 Madison Stock by Julian's former attorney. (Madison Stock Resp. I. ¶ 13; Jan. 17 Tr. at 11:22-12:7; see Julian Letter).[20] As explained below, the Court concludes that personal jurisdiction over Julian does not exist under New York's long arm statute. Consequently, should this case proceed as a rule interpleader action, Julian's motion to dismiss is granted.
Julian is domiciled in Florida, not New York.[21] "Three elements must be met in order for a court to exercise personal jurisdiction over a non-domiciliary defendant." MWH Int'l, Inc. v. Inversora Murten S.A. , No. 11-CV-2444, 2012 WL 3155063, at *3 (S.D.N.Y. Aug. 3, 2012). "First, the plaintiff's service of process upon the defendant must have been procedurally proper.... Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective.... Third, the exercise of personal jurisdiction must comport with constitutional due process principles." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL , 673 F.3d 50, 59-60 (2d Cir. 2012).[22] "A plaintiff must establish the court's jurisdiction with respect to each claim asserted." Sunward Elecs., Inc. v. McDonald , 362 F.3d 17, 24 (2d Cir. 2004).
"[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Penguin Grp. (USA) Inc. , 609 F.3d at 34-35 (quotations omitted). "However, prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction. In their inquiry, courts will construe the pleadings and affidavits in the light most favorable to complainant, resolving all doubts in its favor." MWH Int'l, Inc. , 2012 WL 3155063, at *3 (quotations *480 and citations omitted) (alterations omitted); accord Porina v. Marward Shipping Co., Ltd. , 521 F.3d 122, 126 (2d Cir. 2008).
1. Service of Process
As to the first requirement, service of process, Julian was served personally in Florida in compliance with Rule 4(e)(2)(A). (See Summons Returned Executed, Dkt. No. 16, at 1); Fed. R. Civ. P. 4(e)(2)(A) ("[A]n individual ... may be served in a judicial district of the United States by ... delivering a copy of the summons and of the complaint to the individual personally[.]"). Julian does not contest the propriety of service. (See Jan. 17 Tr. at 17:7-12; see generally Julian Mot.). The Court, therefore, concludes this element is satisfied. See, e.g., Licci , 673 F.3d at 59 (declining to analyze the service requirement of personal jurisdiction when defendant "does not deny that it was properly served ... with the plaintiffs' summons and complaint").
2. Statutory Basis
As to the statutory basis of personal jurisdiction, this is "determined by the law of the state in which the court is located," which in this case is New York. Spiegel v. Schulmann , 604 F.3d 72, 76 (2d Cir. 2010).
Madison Stock concedes that it is not seeking to prove that this Court has general personal jurisdiction over Julian, i.e. that Julian is present in New York, which would permit jurisdiction over all claims over him. Rather, it seeks to establish that his conduct gives rise to specific personal jurisdiction and that the claims asserted are connected to the acts giving rise to that jurisdiction. CPLR § 302(a) governs the exercise of specific personal jurisdiction over a non-domiciliary like Julian. See MWH Int'l, Inc. , 2012 WL 3155063, at *3 ("Where the claim does not arise from a federal statute that extends personal jurisdiction through service of process, the long-arm statute of the forum state-in this case New York's long-arm statute N.Y. C.P.L.R. § 302(a) ['Acts which are the basis of jurisdiction']-applies."); Penguin Grp. (USA) Inc. , 609 F.3d at 35 ("In New York, the question of long-arm personal jurisdiction over an out-of-state defendant is governed by N.Y. C.P.L.R. § 302.").
New York's long arm statute provides personal jurisdiction over a non-domiciliary like Julian in two ways relevant to this case. First, a court may exercise jurisdiction over a non-domiciliary "who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state." CPLR § 302(a)(1). Second, personal jurisdiction exists if the non-domiciliary "commits a tortious act without the state causing injury to person or property within the state ... if he ... expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." CPLR § 302(a)(3)(ii). Under either provision, there must be a nexus between the cause of action and the defendant's conduct. MWH Int'l, Inc. , 2012 WL 3155063, at *4 ("The claim at bar must arise from the defendant's conduct."); see Licci , 673 F.3d at 60 (business transaction); Penguin Grp. (USA) Inc. , 609 F.3d at 35 (tortious conduct).
i. Business Transactions
"[I]n determining whether personal jurisdiction may be exercised under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." Licci , 673 F.3d at 60 (quotations and alterations omitted). "The *481 New York Court of Appeals has explained that the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York, thereby invoking the benefits and protections of its laws." Id. at 61 (quotations and citations omitted). "Although Section 302(a)(1) is typically invoked in breach of contract cases, it applies as well to actions in tort when supported by a sufficient showing of facts." Sunward Elecs., Inc. , 362 F.3d at 24 (quotations and citations omitted).
The totality of a defendant's activities in New York "determine whether a defendant has transacted business in such a way that it constitutes purposeful activity satisfying the first part of the test." Best Van Lines, Inc. v. Walker , 490 F.3d 239, 246 (2d Cir. 2007) (quotations and alterations omitted). Although "[a] defendant need not physically enter New York State in order to transact business," some actions, standing alone, are insufficient to establish personal jurisdiction under the long arm statute. Licci , 673 F.3d at 61-62 (citing Fischbarg v. Doucet , 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 880 N.E.2d 22 (2007) ). For example, "merely telephoning a single order to New York requesting a shipment of goods to another state, or the transitory presence of a corporate official here, or communications and shipments sent here by an out-of-state doctor serving as a consultant to plaintiff's New York physician do not support N.Y. C.P.L.R. § 302(a)(1) jurisdiction." Id. at 62 (quotations and alterations omitted). And "[t]elephone calls and other communications to New York, standing on their own, do not necessarily confer jurisdiction." Thorsen v. Sons of Nor. , 996 F.Supp.2d 143, 155 (E.D.N.Y. 2014).
Contacts by telephone or mail only provide a basis for asserting personal jurisdiction over non-resident defendants where the defendant, through those contacts, projected himself into New York in such a manner that he purposefully availed himself of the privilege of conducting activities in New York and thereby invoked the benefits and protections of its laws.
Id. (quotations and alterations omitted). Ultimately, "it is not the quantity but the quality of the contacts that matters under our long-arm jurisdiction analysis." Paterno v. Laser Spine Inst. , 24 N.Y.3d 370, 378, 998 N.Y.S.2d 720, 23 N.E.3d 988 (2014).
Here, the single letter sent by Julian's former lawyer from California to Madison Stock in New York-despite the fact that it asks Madison Stock to perform another business function in New York, i.e. issue securities-does not amount to Julian doing business in New York. For one thing, it is a single act done via letter. That is insufficient. Cf. Best Van Lines, Inc. , 490 F.3d at 248 ("New York courts have concluded that the act of sending [defamatory] letters into the state does not alone amount to a transaction of business within the state under Section 302(a)(1)."); Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs. , 7 N.Y.3d 65, 71, 818 N.Y.S.2d 164, 850 N.E.2d 1140 (2006) (recognizing that "an out-of-state individual investor making a telephone call to a stockbroker in New York" would not allow for personal jurisdiction); Fischbarg , 9 N.Y.3d at 380, 849 N.Y.S.2d 501, 880 N.E.2d 22 ("[M]erely telephon[ing] a single order to New York requesting a shipment of goods to another state ... do[es] not support CPLR 302(a)(1) jurisdiction.") (quotations omitted). For another, there are no other facts in the record to suggest that Julian intended to transact business in New York. The genesis of the letter was the litigation initiated in Florida against Exlites; Julian was *482 seeking to enforce an order issued by that court directing Madison Stock to issue securities. In so doing, Julian was not purposefully availing himself of any privileges, benefits, or protections in New York. See, e.g., Wolfson v. Conolog Corp. , No. 08-CV-3790, 2009 WL 465621, at *4 (S.D.N.Y. Feb. 25, 2009) ("Plaintiff's own alleged purchases of Conolog stock from New York brokers[ ] are also insufficient to provide a specific transactional jurisdictional basis under N.Y. C.P.L.R. 302(a)(1) for the claim alleged here, which is for breach of the payment provisions of contracts that were admittedly negotiated in telephone calls between New Jersey and Utah and required Conolog to provide stock to Utah firms.").
Had Madison Stock heeded the request and transferred the securities, such a "transfer of stock" would not be "sufficient ... to constitute the transaction of business." Pomeroy v. Hocking Valley Ry. Co. , 218 N.Y. 530, 536, 113 N.E. 504 (1916) ; cf. Wiwa v. Royal Dutch Petroleum Co. , 226 F.3d 88, 97 (2d Cir. 2000) (noting that in determining whether "doing business" test for general jurisdiction is satisfied, "cases ... suggest that jurisdiction is not available over a corporation whose only contacts with the forum are listings on the New York stock exchanges and ancillary arrangements involving the distribution of their shares."). Therefore, requesting that a transfer be made-something short of transferring the securities-is insufficient to trigger jurisdiction under § 302(a)(1).
ii. Tortious Conduct
A plaintiff seeking to establish personal jurisdiction under § 302(a)(3) must demonstrate five elements:
(1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce.
Penguin Grp. (USA) Inc. , 609 F.3d at 35 (citing LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 735 N.E.2d 883 (2000) ).
Here, even when construing the allegations in the light most favorable to the plaintiff, Madison Stock cannot establish several of these elements. First, the Julian Letter, which threatens to sue Madison Stock-and the subsequent attempt to sue Madison Stock in Florida-may not be a tortious act. The Julian Letter threatens to sue Madison Stock for failure to transfer shares; Madison Stock does not explain what kind of tort this could possibly be. If it is one for abuse of process-the one claim contained in the Complaint that refers to threats of litigation-an abuse of process tort is not complete when there is a mere threat of litigation. The litigation must go beyond threat for the tort to have been committed. "Abuse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." Curiano v. Suozzi , 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984). The mere filing of a lawsuit by Julian against Madison Stock does not amount to a tort. In re Nicholas , 457 B.R. 202, 216 (Bankr. E.D.N.Y. 2011) ("To succeed on an abuse of process claim, a party must demonstrate more than the initiation and pursuit of a lawsuit."). More is required, but Madison Stock does not explain how Julian committed a cognizable tort against it.
*483 Second, even if Julian committed a tort by threatening litigation, it did not cause an injury to a person or property in New York. Madison Stock was threatened with suit, and Julian attempted to sue it, in Florida. Injury from litigation threatened or initiated in Florida does not amount to injury in New York simply because Madison Stock is a New York resident. See Terrydale Liquidating Tr. v. Barness , No. 82-CV-7920, 1985 WL 1983, at *2 (S.D.N.Y. June 27, 1985) ("Even the fact that an injured party resides or is domiciled in New York does not alone establish that its injury occurred in that state."). "[T]he situs of a commercial tort injury under § 302(a)(3) is generally where the critical events associated with the dispute took place," id. , and any litigation-associated injury appears to be Florida, not New York. Semon v. Brandon , No. 08-CV-499, 2008 WL 11450574, at *2 (E.D.N.Y. Nov. 15, 2008) ("Here, the Plaintiffs allege that the Defendants committed abuse of process, a tort under New York law, when they filed a lawsuit against the Plaintiffs in California.... [Section] 302(a)(2) is ... unavailing because, to the extent that the tort of abuse of process was committed, it was committed in California not New York. Likewise, 302(a)(3) does not provide a basis for personal jurisdiction because for long-arm purposes, an injury occurs at the location of the original events that caused the injury, not the location where the resultant damages are felt by plaintiff.") (quotations and alterations omitted).
In any event, Madison Stock cannot satisfy the final element necessary for § 302(a)(3) jurisdiction. "The fifth element-defendant's deriving substantial revenue from interstate or international commerce-is designed to narrow the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but whose business operations are of a local character." LaMarca , 95 N.Y.2d at 215, 713 N.Y.S.2d 304, 735 N.E.2d 883 (quotations omitted). Although the Complaint here does allege Julian's relationship with Exlites, (see, e.g. , Compl. ¶ 30), it says nothing about Julian deriving any revenue-that is interstate or international in character-from that relationship. A complaint that is silent on the extent a defendant derives revenue from interstate commerce does not establish personal jurisdiction under § 302(a)(3). Fantastic Graphics Inc. v. Hutchinson , No. 09-CV-2514, 2010 WL 652987, at *4 (E.D.N.Y. Feb. 22, 2010) ("When considering only the allegations of the complaint, as the court is required to do, it cannot be said that Plaintiff has satisfied the revenue pleading requirements of either subsection of Section 302(a)(3) of the CPLR. Accordingly, the court grants the motion to dismiss the complaint for failure to properly allege personal jurisdiction over Defendants Stellar and Kough."); Mazloum v. Int'l Commerce Corp. , 829 F.Supp.2d 223, 230 n.3 (S.D.N.Y. 2011) ("Mazloum would still fail to obtain jurisdiction, as he has not alleged specific facts that ... Miller derives substantial revenue from interstate or international commerce[.]").
The Court, therefore, lacks personal jurisdiction over Julian under New York's long-arm statute, based either on business transactions or tortious conduct. Because Madison Stock has failed to establish personal jurisdiction over Julian under the long-arm statute, the Court need not examine whether its exercise would comport with due process. See Penguin Grp. (USA) Inc. , 609 F.3d at 35 ("Except where the long-arm statute permits jurisdiction to the extent permitted by principles of Due Process-as it commonly does in states other than New York-analysis under Due Process principles is not necessary unless there is long-arm jurisdiction under the *484 applicable state statute."); e.g., Leviton Mfg. Co. v. Reeve , 942 F.Supp.2d 244, 263 (E.D.N.Y. 2013) ("The Court finds that personal jurisdiction over the Attorney Defendants cannot be exercised under New York's long-arm statute. Therefore, the Court need not address the issue of whether the exercise of jurisdiction in the instant case comports with the requirements of due process.").
To summarize, although Madison Stock can establish the elements for rule interpleader, it cannot establish personal jurisdiction over Julian. Should Madison Stock decline to proceed via statutory interpleader-which is discussed below-the Court would dismiss Julian from the case.
II. Statutory Interpleader
A. Subject Matter Jurisdiction
"Title 28, United States Code, Section 1335 grants original jurisdiction to the district courts over interpleader actions under certain circumstances." Lexington Ins. Co. , 2016 WL 1267801, at *2. Thus, while rule interpleader requires an independent basis for jurisdiction, statutory interpleader itself provides jurisdiction over the action, provided its requirements are met. See Mitchell , 966 F.Supp.2d at 102 ("[The jurisdictional] requirements are provided in 28 U.S.C. § 1335."). Pursuant to the interpleader statute, "a district court has jurisdiction over a civil action involving adverse claims to money or property worth $ 500 or more so long as at least two of the adverse claimants are of diverse citizenship and 'are claiming or may claim to be entitled to such money or property.' " Ashton v. Josephine Bay Paul & C. Michael Paul Found., Inc. , 918 F.2d 1065, 1068 (2d Cir. 1990) (quoting 28 U.S.C. § 1335 ). But a " 'court will not have jurisdiction in an action of interpleader unless the stakeholder has deposited," A & E Television Networks, LLC v. Pivot Point Entm't, LLC , 771 F.Supp.2d 296, 300 (S.D.N.Y. 2011) (quoting Metal Transp. Corp. v. Pac. Venture S.S. Corp. , 288 F.2d 363, 365 (2d Cir. 1961) ), "such money or property or has paid the amount of or the loan or other value of such instrument or the amount due" into the Court's registry or "has given bond ... in such amount," 28 U.S.C. § 1335. See also William Penn Life Ins. Co. of N.Y. v. Viscuso , 569 F.Supp.2d 355, 360 (S.D.N.Y. 2008).[23] Statutory interpleader therefore has three jurisdictional requirements: "1) the amount in controversy must be $ 500 or more; 2) the two or more adverse claimants claiming entitlement to the amount in controversy must be of diverse citizenship; and 3) the plaintiff must deposit either the amount at issue, or an appropriate bond, with the court." Simonee , 2015 WL 8490998, at *2 (quotations and alterations omitted).
The Court has already determined that the amount in controversy exceeds $ 75,000, see supra at pp. 475-76, and thus the first requirement is clearly met. As to the second requirement, diversity of citizenship, the Court must conduct a separate inquiry from its analysis under rule interpleader, as "[t]he citizenship of the plaintiff-stakeholder is irrelevant," Simonee , 2015 WL 8490998, at *2 (quotations omitted), and the statute "calls for only minimal diversity, that is, diversity of citizenship between two or more claimants without regard to the circumstance that other rival claimants may be co-citizens," Mitchell , 966 F.Supp.2d at 102 (quotations omitted). Here, the claimants are citizens *485 of Florida (Julian, Washington, and Soleeze), Texas (Singleton), Utah and New Mexico (Exlites), Belize (Allegro Holdings, Azure Pro, Citrine Enterprises, Sandstone Consulting, and Zenlux), and Belize and the Bahamas (Scorpion Bay). (Compl. ¶¶ 3-14). There is minimal diversity among two or more of these parties. And even considering only those claimants who have been served and who have appeared-Exlites, Julian, and Singleton-there is minimal diversity among the claimants. See, e.g., N.Y. Times Co. v. Newspaper & Mail Deliverers' Union of N.Y. & Vicinity , No. 12-CV-5430, 2017 WL 6987961, at *2 (S.D.N.Y. Dec. 7, 2017) ("Here, ... two or more adverse claimants are of diverse citizenship. Of the 8 individual defendants, at least one is a citizen of New York and one a citizen of Connecticut. Minimal diversity suffices for § 1335 jurisdiction.") (quotations and citations omitted).
The issue here arises under the third requirement to deposit the disputed property or an equivalent bond with the Court. Madison Stock has not made such a deposit. (See Jan. 17 Tr. at 3:6-5:11). It contends it should not have to because: (1) the purpose of the deposit requirement is to maintain the status quo and "[i]ssuing the shares requested [by Julian] for deposit will materially change the status quo" by, for example, diluting outstanding shares; (2) the deposit requirement here would be futile, as "there is nothing to deposit," and Madison Stock has "no indication of the value of what the bond should be;" and (3) it would be "manifestly unfair for the uninterested Plaintiff to be subjected to liability from a conflict between Defendants ... and have to pay for a bond." (Madison Stock Resp. II ¶¶ 9-10, 12).
Madison Stock's arguments are unsupported by any caselaw and are without merit. First, the deposit requirement is not optional; without a deposit or bond, the Court does not have subject matter jurisdiction and thus has no authority to hear the dispute. See A & E Television Networks, LLC , 771 F.Supp.2d at 300-01 ; Fed. Ins. Co. v. Tyco Int'l Ltd. , 422 F.Supp.2d 357, 396 (S.D.N.Y. 2006) (rejecting defendant's argument that the deposit requirement is flexible). Indeed, "a district court has no jurisdiction of an action of interpleader if the stakeholder deposits a sum smaller than that claimed by the claimants." Metal Transp. Corp. , 288 F.2d at 365 ; see also A & E Television Networks, LLC , 771 F.Supp.2d at 301 ("[I]n order for a court to have jurisdiction over an interpleader action, the stakeholder must pay into the court registry the highest amount for which it ultimately may be liable.") (quotations omitted) (collecting cases); Coopers & Lybrand, L.L.P. v. Michaels , No. 95-CV-5643, 1995 WL 860760, at *9 (E.D.N.Y. Oct. 31, 1995) ("[A] jurisdictional prerequisite to statutory interpleader is that the stakeholder deposit a bond in the highest amount that the claimants are claiming or may claim to be entitled.") (quotations omitted) (collecting cases).
Second, depositing the stock certificates or a bond equivalent to the value of the disputed shares would cause no disruption to Exlites. The purpose of the deposit requirement is not to maintain the status quo, as Madison Stock argues; rather, it "is to assure the safety of the disputed stake, thereby facilitating enforcement of the Court's ultimate judgment." Price & Pierce Int'l, Inc. v. Spicers Int'l Paper Sales, Inc. , No. 84-CV-3728, 1984 WL 635, at *3 (S.D.N.Y. July 16, 1984). Should the Court determine that the deposited shares be canceled, it could order that to be done.
Third, the structure of statutory interpleader is intended to relieve the *486 stakeholder of its responsibility, and the deposit requirement ensures that is possible. Without it, the Court could not dismiss Madison Stock from the action and proceed to the dispute between the claimants. See 28 U.S.C. § 2361 ("[The] district court shall hear and determine the case [brought under statutory interpleader], and may discharge the plaintiff from further liability[.]"); Mitchell , 966 F.Supp.2d at 103 ("[O]nce an interpleader plaintiff has satisfied the Section 1335 jurisdictional requirements of an interpleader claim, the court should readily grant discharge of the stakeholder.") (quotations and citations omitted) (alterations omitted). While Madison Stock believes this requirement is unfair, it is the price of entry into federal court.[24] In return, it obtains peace from the harassment of competing claims. E.g., Madison Stock Transfer, Inc. v. NetCo Invs., Inc. , No. 06-CV-3926, 2007 WL 9710589, at *3 (E.D.N.Y. Sept. 19, 2007) ("Upon such deposit, [Madison Stock] shall be relieved of further liability in connection with the transfer of shares of NetCo."); Algemene Bank Nederland, N.V. v. Soysen Tarim Urunleri Dis Ticaret Ve Sanayi, A.S. , 748 F.Supp. 177, 180 (S.D.N.Y. 1990) ("Algemene was fully justified in invoking interpleader. Having done so, and having complied with the statutory requirements, Algemene is now entitled to a discharge and protection against further liability."). Without a deposit or bond, there is no jurisdiction under the federal statute.
As for Madison Stock's argument that there is "nothing to deposit," that is belied by its history in other similar matters. Madison Stock has, in fact, made deposits or posted bonds. (Jan. 17 Tr. at 6:7-13 ("The Court: ... I take it you have no intention of posting a bond? ... [Attorney for Madison Stock]: ... I have not yet broached that topic with Madison. And we have done it before and I will talk to them about doing it again[.]") ). For example, Madison Stock posted a bond of $ 100,000 in one of its previous interpleader cases in the Eastern District of New York. See Madison Stock Transfer, Inc. v. NetCo Invs., Inc. , No. 06-CV-3926, Injunction Bond filed Sept. 6, 2006, Dkt. No. 17.
Therefore, Madison Stock must either deposit a bond in the value of the disputed shares or deposit "the documents necessary for final disposition of the shares of stock at issue." NetCo Investments, Inc. , 2007 WL 9710589, at *3. This includes the 300 million shares pertaining to Julian and Washington, as deposits under statutory interpleader must be the full value of the disputed property. There is no requirement to deposit the disputed 40 million shares or its equivalent because, as noted earlier, those shares are not subject to competing claims. See, e.g., Doe v. Ejercito De Liberacion Nacional , No. 15-CV-8652, 2015 WL 9077344, at *4 (S.D.N.Y. Dec. 16, 2015), modified in part , 2016 WL 1073100 (Mar. 10, 2016) ("[D]eposit or bond is plainly required in order to maintain an interpleader action. On the record before the Court, there is no reason in this case to deviate from the statutorily prescribed practice of depositing the contested funds with the court during the pendency of the interpleader. The Court therefore directs JP Morgan to deposit the funds within 28 days of entry of this decision.") (citation omitted).
Should Madison Stock fail to make such a deposit by April 24, 2019 , the Court will *487 conclude that Madison Stock is not proceeding under statutory interpleader. The Court would treat this case as one proceeding under rule interpleader-but, as noted above, would dismiss Julian from such an action. As explained below, the personal jurisdiction problem is not present should Madison Stock make the deposit and proceed under statutory interpleader.
B. Personal Jurisdiction
Although the Court lacks personal jurisdiction over Julian in the context of rule interpleader, that is not the case for statutory interpleader. For statutory interpleader, nationwide service of process is available pursuant to 28 U.S.C. § 2361. State Farm Fire & Cas. Co. v. Tashire , 386 U.S. 523, 528 n.3, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967) ("[S]tatutory interpleader enables a plaintiff to employ nationwide service of process[.]"); Simonee , 2015 WL 8490998, at *2 n.3 (" Rule 22 and statutory interpleader actions ... have different requirements for service of process. Pursuant to Rule 22, the usual service provisions of Rule 4 of the Federal Rules of Civil Procedure apply. By contrast, nationwide service of process pursuant to 28 U.S.C. § 2361 is available for statutory interpleader actions, thus permitting a stakeholder to reach claimants in a number of states.") (quotations and citations omitted); see 28 U.S.C. § 2361 ("In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants.... Such process ... shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found."). The purpose of the nationwide service of process provision is to allow "the stakeholder to obtain relief, when otherwise because of the territorial limits imposed on state-court jurisdiction the stakeholder might be subject to multiple liability or at least multiple litigation." 7 Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 1711 (3d ed. 2018).
Service under § 2361 itself establishes personal jurisdiction; there is no need "for the federal court to concern itself with whether the claimants have minimum contacts with the forum state." Id. ; Rubinbaum LLP v. Related Corp. Partners V, L.P. , 154 F.Supp.2d 481, 485-86 (S.D.N.Y. 2001) (" Section 2361 provides that district courts may issue process in statutory interpleader actions for all claimants nationwide. [Federal Rule of Civil Procedure] 4(k)(1)(C) provides that service in a federal interpleader action is sufficient to establish personal jurisdiction over the served defendant.") (quotations omitted); Fed. R. Civ. P. 4(k)(1)(C) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant ... when authorized by a federal statute.").
Julian was served personally with the summons and Complaint in Florida, (see Summons Returned Executed, Dkt. No. 16), and he does not contest the propriety of service. (See Jan. 17 Tr. at 17:7-12; see generally Julian Mot.). The Court therefore, has personal jurisdiction over Julian pursuant to 28 U.S.C. § 2361 and Rule 4(k). See, e.g. , Citigroup Glob. Mkts., Inc. v. KLCC Invs., LLC , No. 06-CV-5466, 2007 WL 102128, at *3 (S.D.N.Y. Jan. 11, 2007) ("D and D Trust argues that the case must be dismissed for lack of personal jurisdiction. D and D Trust claims that it is a citizen of New Jersey and does not have sufficient minimum contacts with New York to support the exercise of personal jurisdiction by a federal court sitting *488 in New York. This contention is meritless. Title 28 section 2361 of the United States Code allows nationwide service of process in statutory interpleader actions which ... are brought under § 1335. Therefore, even if it has no contacts with New York, this Court has personal jurisdiction over D and D Trust.") (citations omitted).[25] Consequently, to the extent that Madison Stock proceeds via statutory interpleader-by making the requisite deposit or bond posting-Julian's motion to dismiss is denied.
C. Venue
There is another issue, however: venue. Julian objects to venue in the Eastern District of New York because only Madison Stock resides there and because no substantial events occurred there. (Julian Mot. at 18-19). Madison Stock recognizes that none of the claimants reside in New York, (Jan. 17 Tr. at 9:5-7), but argues venue is proper because both Julian and Exlites are requesting that action be taken in the Eastern District of New York-namely the issuance or cancelation of stock. (Id. at 8:7-24 ("Both camps in this interpleader action have requested specific acts to be performed within the Eastern District, and those acts are directly at odds with each other."); see also Compl. ¶¶ 18-20 ("[Madison Stock] is a transfer agent that performs all its functions within the State of New York, county of Kings, which is Madison Stock Transfer's place of business.... All Defendants have requested that Madison Stock Transfer perform transfer agent activities in its place of business without leaving the county of Kings in the State of New York. Plaintiff Madison Stock Transfer has no offices outside of the Kings county and does not travel for the performing of transfer agent services.") ).
Under 28 U.S.C. § 1397, a statutory interpleader action "may be brought in the judicial district in which one or more of the claimants reside." 28 U.S.C. § 1397. The general venue statute, 28 U.S.C. § 1391, however, provides that "[a] civil action may be brought in ... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). The parties have not briefed which venue statute controls in a statutory interpleader action. There is a split in authority. Compare RCA Records v. Hanks , 548 F.Supp. 979, 982 (S.D.N.Y. 1982) ("The general venue provisions of [§] 1391(a), which apply to Rule 22... interpleader, are unavailable to RCA. A plaintiff may not reap the advantages of both forms of interpleader while escaping the burdens of each. Here, RCA relies on the statute to gain personal jurisdiction over Parker through the provision for nationwide service of process. Having accepted the benefits of the statute, RCA seeks to transform its action to a Rule 22 interpleader so as to validate its state of residence as a proper forum. The claimant-protecting function of 28 U.S.C. [§] 1397 cannot be so easily manipulated."), with Ejercito De Liberacion Nacional , 2015 WL 9077344, at *3 ("While no claimant resides in New York, this does not end the analysis, as courts ... have held that the use of 'may' (rather than 'must') in the federal interpleader *489 statute is intended to expand, rather than limit, the general statutory venue provision of 28 U.S.C. § 1391 [.]").
Thus, before making its deposit with the Court, Madison Stock must show cause by April 10, 2019 as to why venue is proper in the Eastern District of New York-namely, why it can invoke 28 U.S.C. § 1391 over a venue statute specific to statutory interpleader, 28 U.S.C. § 1397. Julian may respond by April 24, 2019 . In any response, Julian should indicate whether a single defendant's objection to venue is sufficient to transfer the case pursuant to 28 U.S.C. § 1404(a).[26]
CONCLUSION
To summarize, the Court concludes:
1. Madison Stock may maintain this action as a statutory interpleader action, provided it posts a bond equivalent to the present value of 300 million shares of disputed Exlites stock or deposits the documents necessary for final disposition of that quantity of shares. Such deposit or bond must be posted by April 24, 2019 .
2. Madison Stock must also explain why venue is proper in this District and do so by April 10, 2019 . Julian has until April 24, 2019 to respond.
3. Should Madison Stock fail to make the deposit or post a bond, the Court will conclude that it does not intend to proceed via statutory interpleader. The case will then proceed as a rule interpleader action.
4. To the extent that the case is one based on statutory interpleader, Julian's motion to dismiss is denied. Should the prerequisites to statutory interpleader not be satisfied, and the case proceed under rule interpleader, Julian's motion to dismiss is granted, and the Court will dismiss Julian from the action.
SO ORDERED.

A transfer agent is someone who:
engages on behalf of an issuer of securities or on behalf of itself as an issuer of securities in (A) countersigning such securities upon issuance; (B) monitoring the issuance of such securities with a view to preventing unauthorized issuance, a function commonly performed by a person called a registrar; (C) registering the transfer of such securities; (D) exchanging or converting such securities; or (E) transferring record ownership of securities by bookkeeping entry without physical issuance of securities certificates.
15 U.S.C. § 78c(a)(25).

In the paragraph describing this vote, Madison Stock references an attached document labeled "removal of Julian from [E]xlites." (See Compl. ¶ 33). However, that document shows the result of an October 2016 vote to remove Julian, not a May 2015 vote. (See Notice of Special Shareholders' Meeting, attached as Ex. J to Compl., Dkt. No. 1 ("Removal of Julian Docs.") ).

The Complaint does not indicate when these 15 million shares were issued to the Belize entities, nor who initiated the issuance.

Under Madison Stock's policy for cancelling shares, "shares may be unilaterally canceled upon patent error relatively contemporaneously or timely upon discovery of patent error, or upon notice to the holder." (Compl. ¶ 43). Madison Stock avers that "[t]he corporate and personal intrigue and drama does not classify as patent error" and that "the transactions in question are too far away in time as to make any cancelation reasonably contemporaneous," thus defeating any eligible grounds for cancelation due to patent error. (Id. ¶¶ 44-45).

As described below, Julian did attempt to amend his complaint on June 5, 2018. However, the Florida court denied his motion to amend on November 1, 2018.

The Request for Relief states the amount of shares pertaining to Soleeze is 20 million. However, the body of the Complaint twice indicates that the amount of shares issued to Soleeze in December of 2014 was 25 million, rather than 20 million. (Compl. ¶¶ 29, 40).

It also seeks other relief. For example, Madison Stock seeks "instruction on the 2016 Florida Litigations" and a "determination of controlling interest in Defendant Exlites." (Compl. ¶¶ 66.5-66.6). In the meantime, Madison Stock requests that "all issuances and cancelations by the parties ... be stayed until the matter [is] resolved" and that "Defendants Julian and Washington be stayed from instituting litigation to enforce the Florida default judgments and actions for wrongful refusal to transfer ..., as there is significant indicia of fraud in the Florida default judgments." (Id. ¶¶ 62, 64). Along similar lines, Madison Stock requests "that this court join the 2016 Florida Litigation for inquest as to the veracity of the default judgment" based on Federal Rule of Civil Procedure 18(b) and 20(a). (Id. ¶ 57). The Court is doubtful if any of this relief is available in an interpleader action or on the basis of Madison Stock's other causes of action. Dist. Attorney of N.Y. Cty. v. Republic of the Philippines , 307 F.Supp.3d 171, 190 (S.D.N.Y. 2018) ("To the extent that a court has greater discretion in the interpleader context than it does in other contexts, that discretion finds its currency in a court's decision to permit a plaintiff to consolidate multiple adverse claims into a single action in order to protect the plaintiff from vexatious and multiple litigation. It does not provide courts with latitude to eschew clear legal principles in favor of an amorphous sense of equity.") (citations and quotations omitted) (alterations omitted). At this point, however, the Court need not reach such questions.

Madison Stock's Request for Relief does not mention the 20 million shares of stock issued to Scorpion Bay, which, according to the Complaint, Exlites seeks to cancel. (Compl. ¶ 38; see Req. for Relief ¶ 66).

Madison Stock simultaneously states that the 300 million shares "will have a significantly less realizable liquidation value as the market for Defendant Exlites ... common shares is extremely thin." (Compl. ¶ 21).

This Court has an independent obligation to assure itself that it has subject matter jurisdiction and may raise the issue sua sponte as it did during oral argument on the motion. See Lyndonville Sav. Bank & Tr. Co. v. Lussier , 211 F.3d 697, 700-01 (2d Cir. 2000) ("Unlike failure of personal jurisdiction, failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte . If subject matter jurisdiction is lacking, the action must be dismissed.").

Whether characterized as a motion to dismiss for personal jurisdiction or an inquiry into subject matter jurisdiction, the Court may consider matters outside of the pleadings in deciding these issues. Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi , 215 F.3d 247, 253 (2d Cir. 2000) ("[In deciding] the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing."); Sea Tow Servs. Int'l, Inc. v. St. Paul Fire & Marine Ins. Co. , 779 F.Supp.2d 319, 322 (E.D.N.Y. 2011) ("[T]he Court may ..., in its discretion, consider evidence outside of the pleadings in resolving the motion [for lack of personal jurisdiction].").

No party asks the Court to abstain in favor of the open Florida litigation. "[T]he Second Circuit has held that 'the availability of interpleader jurisdiction does not require its exercise, and the district court acts within its discretion to decline adjudicating issues raised in an interpleader action that can be 'fairly adjudicated' in state court.' " Perlman v. Fid. Brokerage Servs. LLC , 932 F.Supp.2d 397, 416 (E.D.N.Y. 2013) (quoting Nat'l Union Fire Ins. Co. v. Karp, 108 F.3d 17, 21 (2d Cir. 1997) ). Because Julian obtained a default judgment against Exlites in the Florida litigation, and because his subsequent motion to add Madison Stock as a defendant was denied, (see Julian Default Docket), the Court has no reason to believe further litigation in Florida would lead to resolution of the issues raised in this action. Abstention would therefore be inappropriate.

The Court makes the citizenship determination of these entities for the purposes of the current motion only based on the limited information in the Complaint. Should these entities appear, the Court will reexamine their citizenship.

At the oral argument, Madison Stock was unable to tell the Court which provision of 28 U.S.C. § 1332 applied to this case, either § 1332(a)(2) (providing jurisdiction between "citizens of a State and citizens or subjects of a foreign state") or § 1332(a)(3) (providing jurisdiction for "citizens of different states and in which citizens or subjects of a foreign state are additional parties"). (See Jan. 17 Tr. at 24:4-11). The more appropriate provision appears to be § 1332(a)(3), because there are United States citizens on both sides of the litigation.

This appears to be made up of the 200 million shares claimed by Julian, the 100 million shares claimed by Washington, the 20 million shares claimed by Soleeze, and the 15 million shares claimed by the Belize entities. However, as noted in footnote 6, it is unclear whether the disputed Soleeze shares amount to 20 or 25 million.

Madison Stock also argues the Court has federal question jurisdiction. (See Madison Stock Resp. I ¶ 21 (arguing the Securities Act of 1933 "provides ample remedy and therefore right under federal auspices," creating a federal question); Madison Stock Resp. II ¶ 8 ("[Madison Stock] is governed by issuance rules of 17 CFR § 17Ad of when a transfer agent can issue securities, which is federal."); Jan. 17 Tr. at 2:25-3:2 ("[W]e have sufficient federal question by the transfer agency governed by 15(a)(d)(7), ... the transfer regulations under the 1934 [A]ct.") ). The Court disagrees. Not only is it unclear which securities regulation Madison Stock relies on to establish federal question jurisdiction, but Madison Stock has not asserted a claim under any federal securities law. And Madison Stock's mere status as a transfer agent under the securities law does not give the federal courts subject matter jurisdiction over any lawsuit in which it is a party.

Unlike statutory interpleader, rule interpleader does not require a plaintiff to deposit the disputed funds or property with the Court. Simonee , 2015 WL 8490998, at *2 ("[T]he stakeholder is not obligated to deposit either the amount in controversy or a bond with the court, although the court may nevertheless order a deposit pursuant to its general equitable powers or Rule 67 of the Federal Rules of Civil Procedure.").

It is unclear whether the demand letter was sent on behalf of both Julian and Washington, or just Julian. (See Julian Demand Letter). However, the Complaint makes clear that Julian's counsel is demanding the issuance of the 300 million shares from both of the Florida default judgments. (Compl. ¶ 51).

Julian argues Madison Stock has waived specific jurisdiction because it did not allege such in the Complaint. (Julian Mot. at 14). The argument is without merit. Although Madison Stock does not use the term "specific jurisdiction" in the Complaint, it does lay out the facts that form the basis of jurisdiction over Julian. (See Compl. ¶¶ 20, 51).

This letter may have been part of a series of exchanges between Madison Stock and Julian's former attorney, (see Jan. 17 Tr. at 14:17-15:6); however, since Madison Stock has not provided the other communications in any of its filings, they are not considered in the Court's analysis. (See id. at 15:7-11 ("The Court: ... [I]f that is the basis for specific personal jurisdiction, those other correspondences, I think you need to file it with the Court. Because right now we just have the one correspondence and I'll base the decision ... on this.") ).

"[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." Miss. Band of Choctaw Indians v. Holyfield , 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (citing Texas v. Florida , 306 U.S. 398, 424, 59 S.Ct. 563, 83 L.Ed. 817 (1939) ). "Domicile, therefore, has both a physical and a mental dimension and is more than an individual's residence, although the two typically coincide." 13E Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 3612 (3d ed. 2018). As such, "[d]omicile is not necessarily synonymous with residence, and one can reside in one place but be domiciled in another." Holyfield , 490 U.S. at 48, 109 S.Ct. 1597 (quotations and citations omitted).

Unlike several other states, "[t]he New York long-arm statute does not extend in all respects to the constitutional limits established by International Shoe Co. v. Washington [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ] and its progeny." Licci , 673 F.3d at 60-61 (citation omitted); see Banco Ambrosiano v. Artoc Bank & Tr. Ltd. , 62 N.Y.2d 65, 71, 476 N.Y.S.2d 64, 464 N.E.2d 432 (1984) ("[I]n setting forth certain categories of bases for long-arm jurisdiction, CPLR 302 does not go as far as is constitutionally permissible. Thus, a situation can occur in which the necessary contacts to satisfy due process are present, but in personam jurisdiction will not be obtained in this State because the statute does not authorize it.") (citations omitted). Therefore, when "plaintiffs premise their theory of personal jurisdiction upon the New York long-arm statute, [courts] first consider whether the requirements of the statute have been satisfied before proceeding to address whether the exercise of jurisdiction would comport with the Due Process Clause." Licci , 673 F.3d at 61.

The deposit requirement is generally considered "a requirement of maintaining interpleader jurisdiction, rather than a prerequisite to bringing suit." William Penn Life Ins. Co. of N.Y. , 569 F.Supp.2d at 360 (collecting cases).

Statutory interpleader also permits a stakeholder to proceed against claimants when minimal diversity is present and complete diversity is absent. This benefit is another justification for the "somewhat onerous requirement" of making a deposit or posting a bond. Simonee , 2015 WL 8490998, at *2.

Section 2361 provides that "[s]uch process ... shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found." 28 U.S.C. § 2361. Julian was not served by a U.S. marshal. (See Summons Returned Executed, Dkt. No. 16). However, this does not preclude service pursuant to § 2361. This portion of the statute is in conflict with Rule 4-which allows any adult to complete service-and was voided by virtue of the Rules Enabling Act. See Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC , 814 F.3d 146, 154 n.22 (2d Cir. 2016).

Here, the two other appearing Defendants, Exlites and Singleton, have waived venue objections. (See Answer by Singleton dated Aug. 10, 2018, Dkt. No. 19, ¶ 13 ("Defendant does not object to the venue set forth in [the Complaint]."); Answer by Exlites dated Aug. 9, 2018, Dkt. No. 14, ¶ 13 ("Defendant agrees that venue is proper in the Eastern District of New York[.]") ).